NATIONAL LABOR RELATIONS
BOARD, Petitioner-Appellant,

v.

KILGORE CORPORATION,
Respondent-Appellee.

No. 74–1506.

United States Court of Appeals,
Sixth Circuit.

Argued and Submitted Dec. 2, 1974.

Decided Feb. 13, 1975.

Elliot Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., Peter Nash, John Irving, Patrick Hardin, John Burgoyne, Corinna Metcalf, Frank C. Morris, Jr., John J. A. Reynolds, Jr., Director, Region 26, N. L. R. B., Memphis, Tenn., for petitioner-appellant.

Richard A. Brackhahn, Bowling, Brackhahn & Jackson, Yelverton Cowherd, Jr., Memphis, Tenn., for respondent-appellee.

Before WEICK, EDWARDS and PECK, Circuit Judges.

WEICK, Circuit Judge.

The National Labor Relations Board has petitioned this Court, pursuant to Section 10(e) of the National Labor Relations Act as amended, 29 U.S.C. § 160(e), for enforcement of its bargaining order issued against the Kilgore Corporation. Kilgore Corporation (Kilgore) has cross-petitioned to have the order reviewed and set aside. The Board's Decision and Order are reported at 209 NLRB No. 134.

The Decision and Order, which granted the General Counsel's motion for summary judgment, found that Kilgore violated Sections 8(a)(5) and (1) of the Act by refusing to bargain with the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) as the certified collective bargaining representative of employees in the appropriate unit at Kilgore's plant in Toone, Tennessee. The Order required Kilgore to cease and desist from the unfair labor practice found, and similar violations of the employees' Section 7 rights, and, affirmatively, to bargain with UAW on request and to post appropriate notices.

UAW was certified after it won a rerun election ordered by the Board. The refusal to bargain is Kilgore's vehicle for obtaining review by this Court of the Board's decision setting aside the first election (which election the UAW lost) and ordering the rerun election.

Concerning the first election the Board held that Kilgore destroyed the "laboratory conditions" for a fair and free election by not posting the official NLRB notice of election in the proper places and far enough in advance of the election. The Board's decision in the underlying representation proceeding is reported at 203 NLRB No. 28.

Kilgore is engaged in the manufacture and distribution of pyrotechnic products in Toone, Tennessee. Its employees are scattered throughout approximately sixty buildings, approximately seventy per cent of the employees being located in three of the buildings; however, Kilgore has one cafeteria which is used by all employees, for lunch and for daily breaks.

UAW filed its representation petition on February 24, 1972. The Board's Regional Director issued a Decision and Direction of Election on April 14, 1972, which excluded "over-the-road truckdrivers" from the appropriate unit. Kilgore filed with the Board a timely request for review, objecting to the exclusion from the unit of the over-the-road truckdrivers.

On April 27, 1972 the Acting Regional Director sent a letter to Kilgore, enclosing ten copies of the official NLRB notice of election. The letter stated in part:

> Please immediately post the notices at conspicuous and usual posting places easily accessible to the voters.

The notice set out the date, time, place of polling, eligibility requirements, the employees included in and excluded from the voting unit, examples of conduct which may result in the setting aside of the election, and a summary statement of employee rights under the National Labor Relations Act.

The election was set for Thursday, May 11, 1972 to begin at two o'clock p. m., in the cafeteria. In accord with the Regional Director's unit determination the notice expressly excluded over-the-road truckdrivers from the unit.

The Board denied Kilgore's request for review of the unit determination, on Friday, May 5, 1972.

On Monday or Tuesday, May 8 or 9, 1972 Kilgore posted a notice in its main personnel office. All of the other official government notices, including the wage and hour notice and the notice required by the Equal Employment Opportunity Commission and the Office of Federal Contract Compliance, were posted on the bulletin board in the personnel office. However, Kilgore's president testified:

> As a matter of a routine workday the employees would not come into this office, but they do visit the office on personal matters. (A. 72)

On Wednesday, May 10, 1972 at 6:30 a. m., Kilgore posted a second notice of election in the cafeteria where the polling was scheduled for the following day. When a Board agent, named Kirby, contacted Kilgore's attorney, on May 10th, regarding a report by UAW that no notice had been posted, the attorney advised Kirby, the Board agent, that the notices had been posted in the personnel office and in the cafeteria. These were the places that notices had been posted in the two previous elections conducted by the Board. Kilgore's attorney offered to postpone the election for one week if the notice-posting had created any problem, but Kirby replied in the negative as to postponement of the election.

Kirby told Kilgore's attorney that he had raised the possibility of rescheduling the election, with the union's representatives, and that they had declined, and they advised Kirby that they wished to proceed with the election as scheduled.

The election was held on May 11, 1972 at 2:00 p. m. The tally sheet reveals approximately 272 eligible voters. The employer stated, and the Board assumed, that three persons on the eligibility list left Kilgore's employ before the election.

The election resulted in 132 votes for UAW, 132 votes against UAW, one void ballot, and four challenged ballots. The Regional Director sustained two of the challenges, and overruled two challenges. One of the overruled challenges was a vote against UAW, and, because the other vote would not change the outcome of the election, it was not opened. Not counting the void ballot, 98.8% of the eligible voters participated in the election.

UAW subsequently filed fourteen objections to the election. All objections, except the objection pertaining to the posting of the election notices, were eventually overruled or withdrawn, and a new election was ordered.

The rerun election ordered by the Board was held on May 24, 1973. Of approximately 241 eligible voters, 130 cast votes for UAW, 83 cast votes against UAW, with ten challenged ballots. Counting the challenged ballots, 92.5% of the eligible voters participated in the rerun election.

It is noteworthy that a higher percentage of eligible voters participated in the first election than in the rerun election.

The sole issue in this case is whether the Board acted within its discretion in setting aside the first election and ordering the rerun election.

■ The Board has wide degree of discretion in conducting and supervising representation elections, to the end of insuring that such elections are conducted fairly and that the results reflect the free choice of a majority of employees in the appropriate unit. NLRB v. A. J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 91 L.Ed. 322 (1946). This Court will set aside the Board's determination only if it has acted arbitrarily and abused its discretion. NLRB v. Dean Foods Co., 421 F.2d 664 (6th Cir. 1970), cert. denied, 398 U.S. 939, 90 S.Ct. 1843, 26 L.Ed.2d 271.

■ After considering the record as a whole, we conclude that the Board has acted arbitrarily and has abused its discretion. We deny enforcement of its order.

The Board based its decision in the underlying representation case entirely on the times and places the two notices were posted, and the fact that Kilgore's operations at its Toone, Tennessee plant are conducted in many separate buildings. The Board held that because of the manner in which the notices were posted the employees were not sufficiently advised of the time, date, location of polling, eligibility for voting, and their rights under the National Labor Relations Act; that the employees were unable to discuss election issues "so that they might come to a reasoned decision by the date of the election;" and that thereby the laboratory conditions necessary for a fair election were destroyed.

In General Shoe Corp., 77 NLRB 124, 126–127 the Board wrote:

Conduct that creates an atmosphere which renders improbable a free choice

will sometimes warrant invalidating an election, even though that conduct may not constitute an unfair labor practice. An election can serve its true purpose only if the surrounding conditions enable employees to register a free and untrammeled choice for or against a bargaining representative.

.    .    .    .    .

In election proceedings it is the Board's function to provide a laboratory in which an experiment may be conducted, under conditions as nearly ideal as possible, to determine the uninhibited desires of the employees. It is our duty to establish those conditions; it is also our duty to determine whether they have been fulfilled. When, in the rare extreme case, the standard drops too low, . . . the requisite laboratory conditions are not present and the experiment must be conducted over again.

We conclude, for the reasons set out below, that the times and places the official election notices were posted did not interfere with the employees' freedom of choice and did not disturb the laboratory conditions for the first election.

The Board has not established a rule specifying the time prior to an election when notices must be posted, nor the exact places where the notices must be posted.[1]

In examining the record it is important to note that Kilgore did not have the burden before the Board of proving that the election was fairly conducted; rather, the burden is on the party filing objections to an election, namely the union, to establish that the election was not fairly conducted. NLRB v. Mattison Mach. Works, 365 U.S. 123, 81 S.Ct. 434, 5 L.Ed.2d 455 (1961); NLRB v. Dean Foods Co., 421 F.2d 664 (6th Cir. 1970), cert. denied, 398 U.S. 939, 90 S.Ct. 1843, 26 L.Ed.2d 271.

The record strongly indicates that all of Kilgore's employees knew of the election. Very few employees failed to participate in the election, and the record does not indicate why they did not participate.

Kilgore did post two notices of election. One was posted in the personnel office; the other was posted more than thirty hours before the election, in the cafeteria, which was used by all Kilgore employees for lunch and for work breaks. The employees had five opportunities, during three work breaks and two lunch breaks, to observe the notice.

The election campaign itself alerted employees that an election was scheduled. During the three or four weeks prior to the May 11, 1972 election Kilgore mailed or distributed at least a dozen items of campaign literature to its employees; and UAW also distributed campaign literature and information. On the morning of May 10, 1972 (the day before the election) Kilgore's president, David Giffin, walked through the plant and delivered a prepared speech to all employees assembled at various locations throughout the plant. The speech stated, in opening and in closing, that balloting would be the following day. Finally, the extremely high percentage of employee participation in the election is evidence that knowledge of the election was widespread.

The Board asked why Kilgore delayed posting the notices. The notices contain a description of those employees who were eligible to vote in the election. Over-the-road truckdrivers were expressly excluded from the unit. Kilgore requested the Board to review this exclusion. The Board did not deny the request until Friday, May 5, 1972. The first notice of election was posted in the personnel office, with the other official government notices, on Monday or Tuesday, May 8 or 9, 1972. Had the Board granted Kilgore's request for review, the unit description contained in the notices might have been wrong.

Later, when Kilgore's attorney was notified that there might be a problem because of the notice-posting, he offered

1. See 29 C.F.R. § 101.19(a)(1); Pegwill Packing Co., 115 NLRB 1151 (1956); United States Gypsum Co., 70 NLRB 1322 (1946); Proximity Print Works, 11 NLRB 379 (1939).

to postpone the election for one week, but the Board's agent Kirby and the union rejected this offer and insisted that the election be held as scheduled.

It was not Kilgore's fault that the Board scheduled the election before ruling on all matters affecting the election, and that the Board's final ruling was not made until a few days before the election date.

In the absence of any unfair labor practices by the employer during the first election, these facts indicate that Kilgore was acting in good faith in the manner in which it posted the notices. Neither the Board nor the Regional Director found that Kilgore was acting in bad faith.

·The Board stated that in addition to advising employees that an election would be held, the notice also advised employees of their rights under the Act, and warned employers and unions against committing unfair labor practices.

The Board relies on its decision in Overland Hauling, Inc., 168 NLRB 870 (1967). In that case the employer posted the official notices of election, but turned the section of the notice entitled "Rights of Employees" underneath the remaining portion of the notice. The Board stated in that case:

> The manner in which the Employer posted the Notice herein was a patent attempt to minimize the effect of the Board's Notice. The Employer thereby denied the employees access to information deemed necessary to the conduct of an election and thus interfered with the laboratory conditions essential for a free expression of preference by the voters.

Overland Hauling is distinguishable on its facts from the instant case. In Overland Hauling the employer's bad faith was evident when it attempted to totally obscure part of the intended message of the notice. In the instant case there is evidence of the employer's good faith, and the entire notices actually were posted.

In Pegwill Packing Co., 115 NLRB 1151 (1956) the official notices did not arrive in time to be posted before the election. The employer posted an announcement of his own and called a meeting of all employees after work to announce certain information about the election. The Regional Director set aside the election on the ground that the purpose of the election and the rights of employees, contained in the official notice, were not conveyed to the employees. The Board disagreed. It emphasized the importance of notice-posting, and the fact that the failure to post the notices was not the employer's fault. In its discussion the Board stated:

> Even if we assume, contrary to the Employer's contention, that the employees were not informed by the Petitioner and the Employer of their basic rights under Section 7 of the Act to organize, bargain collectively, and engage in other concerted activities, we think it is fair to assume, in the absence of any evidence to the contrary, that the employees were aware of these long established rights of labor. (115 NLRB at 1154).

In the instant case there is no evidence that the employees were not familiar with the long-established rights of labor. Moreover, they had five opportunities to observe the official notice posted in the cafeteria. The evidence also indicated that NLRB had conducted two elections in the four years prior to May 11, 1972, when notices were posted in the same places, and that Kilgore had retained approximately seventy-five per cent of its employees over that period.

It is difficult for this Court to accept the contention that Kilgore's employees needed additional exposure to the notice involved in the first election in order to ʾ insure a fair and free choice. The Ninth Circuit has described the portion of the Board's notice dealing with the rights of employees as "potentially misleading." NLRB v. Sauk Valley Mfg. Co., 486 F.2d 1127, 1132 (9th Cir. 1973); NLRB v. G. K. Turner Associates, 457 F.2d 484, 486 (9th Cir. 1972).

The notice implies that an employee has an absolute right to refrain from joining or assisting a union.[2] However, Sections 7 and 8 of the Act, 29 U.S.C. §§ 157 and 158, state that an employee's right to refrain from joining or assisting a union may be affected by an agreement between an employer and a labor organization requiring membership in the labor organization as a condition of employment. We agree that the notice is potentially misleading. Additional exposure to it would not be helpful in informing the employees of their rights.

The Board also suggested that Kilgore's employees did not have time to consider the election issues and come to an informed decision. Kilgore and UAW conducted an election campaign prior to the election. Kilgore distributed to its employees at least a dozen pieces of campaign literature; and UAW also distributed campaign literature and information. The employees had ample time to come to an informed decision.

If the Board really felt that Kilgore's employees did not have enough time to reach an informed decision, it should have acceded to the suggestion of Kilgore's counsel, and delayed the election for one week; but the union opposed the delay, as it no doubt felt it could win the election. Since the union lost the first election it moved to set that election aside on the ground that the employees did not have adequate time. The rerun election gave the union another chance for additional campaigning, and the argument that the Board had decided in favor of the union.

In our opinion the laboratory conditions necessary for a free and fair election were not disturbed, and the Board abused its discretion in setting aside the May 11, 1972 election. Therefore, Kilgore was not obligated to bargain with UAW as a result of the certification issued on the basis of the results in the rerun election.

Enforcement denied.

EDWARDS, Circuit Judge, filed a separate dissenting opinion.

EDWARDS, Circuit Judge (dissenting).

Respondent-Appellee Kilgore Corporation manufactured explosives in 60 separate buildings. The Board, prior to the first election, sent the company ten notices for posting. Respondent only posted one in a place accessible to employees, namely, the cafeteria, and then only 30 hours before the election began. There is little doubt that the employees of this plant were well aware of the date of the impending election. But the Board found that the notice contained provisions which if read, could make voters feel more secure in exercising their impartial judgment. It certainly would appear that nearly 300 people could not have had time to read the one notice [1] on the limited break periods that are relied on here.

The union lost the first election by one vote, 133 to 132. Subsequently, the Regional Director recommended that the Board approve setting aside the election and holding a new election, (which the union won), on the ground that the company had failed to post notices of the election at sufficient and appropriate places in timely fashion.

These facts present issues which Congress has committed to the Board's discretion; and I find no abuse thereof.

---

2. Part of the section entitled "Rights of Employees", as contained in the notice, reads:
Under the National Labor Relations Act, employees have the right:
● To self-organization
● To form, join, or assist labor organizations
● To bargain collectively through representatives of their own choosing
● To act together for the purposes of collective bargaining or other mutual aid or protection
● *To refrain from any or all such activities* [Emphasis added] (A. 115).

1. The notice involved, which I consider a fair statement of the law, is reprinted as an appendix to this dissent.

# NOTICE OF ELECTION

26-RC-4182

**PURPOSE OF THIS ELECTION**

This election is to determine the representative, if any, desired by the eligible employees for purposes of collective bargaining with their employer. (See VOTING UNIT in this Notice of Election, for description of eligible employees.) A majority of the valid ballots cast will determine the results of the election.

**SECRET BALLOT**

The election will be by SECRET ballot under the supervision of the Regional Director of the National Labor Relations Board. Voters will be allowed to vote without interference, restraint, or coercion. Electioneering will not be permitted at or near the polling place. Violations of these rules should be reported immediately to the Regional Director or his agent in charge of the election. Your attention is called to Section 12 of the National Labor Relations Act.

ANY PERSON WHO SHALL WILLFULLY RESIST, PREVENT, IMPEDE, OR INTERFERE WITH ANY MEMBER OF THE BOARD OR ANY OF ITS AGENTS OR AGENCIES IN THE PERFORMANCE OF DUTIES PURSUANT TO THIS ACT SHALL BE PUNISHED BY A FINE OF NOT MORE THAN $5,000 OR BY IMPRISONMENT FOR NOT MORE THAN ONE YEAR, OR BOTH.

An agent of the Board will hand a ballot to each eligible voter at the voting place. Mark your ballot in secret in the voting booth provided   DO NOT SIGN YOUR BALLOT.   Fold the ballot before leaving the voting booth, then personally deposit it in a ballot box under the supervision of an agent of the Board.

A sample of the official ballot is shown at the center of this Notice.

**ELIGIBILITY RULES**

Employees eligible to vote are those described under VOTING UNIT in this Notice of Election, including employees who did not work during the designated payroll period because they were ill or on vacation or temporarily laid off, and also including employees in the military service of the United States who appear in person at the polls. Employees who have quit or been discharged for cause since the designated payroll period and who have not been rehired or reinstated prior to the date of this election are not eligible to vote.

**CHALLENGE OF VOTERS**

An agent of the Board or an authorized observer may question the eligibility of a voter   Such challenge MUST be made before the voter has deposited his ballot in the ballot box.

**AUTHORIZED OBSERVERS**

Each of the interested parties may designate an equal number of observers, this number to be determined by the Regional Director or his agent in charge of the election   These observers (a) act as checkers at the voting place and at the counting of ballots, (b) assist in the identification of voters, (c) challenge voters and ballots, and (d) otherwise assist the Regional Director or his agent.

**INFORMATION CONCERNING ELECTION**

The Act provides that only one valid representation election may be held in a 12-month period. Any employee who desires to obtain any further information concerning the terms and conditions under which this election is to be held or who desires to raise any question concerning the holding of an election, the voting unit, or eligibility rules may do so by communicating with the Regional Director or his agent in charge of the election.

---

## VOTING UNIT

**EMPLOYEES ELIGIBLE TO VOTE:**

All production and maintenance employees, machinists, research and development employees, leadmen, assistant foremen, and shipping and receiving department employees employed at KILGORE CORPORATION's Toone, Tennessee, plant, who were employed during the payroll period ending April 9, 1972.

**EMPLOYEES NOT ELIGIBLE TO VOTE:**

Office clerical employees, office custodian employees, over-the-road truckdrivers, professional employees, watchmen, guards, and supervisors as defined in the Act.

**TIME AND PLACE OF ELECTION**

DATE: Thursday, May 11, 1972    HOURS: 2:00 p.m. to 3:45 p.m.

PLACE

The lunchroom

---

UNITED STATES OF AMERICA

**National Labor Relations Board**

**OFFICIAL SECRET BALLOT**

FOR CERTAIN EMPLOYEES OF
KILGORE CORPORATION
Toone, Tennessee

Do you wish to be represented for purposes of collective bargaining by -

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA?

MARK AN "X" IN THE SQUARE OF YOUR CHOICE

| YES | NO |
|-----|-----|
| ☐ | ☐ |

DO NOT SIGN THIS BALLOT. Fold and drop in ballot box.
If you spoil this ballot return it to the Board Agent for a new one.

---

## RIGHTS OF EMPLOYEES

Under the National Labor Relations Act, employees have the right:

- To self organization
- To form, join, or assist labor organizations
- To bargain collectively through representatives of their own choosing
- To act together for the purposes of collective bargaining or other mutual aid or protection
- To refrain from any or all such activities

It is the responsibility of the National Labor Relations Board to protect employees in the exercise of these rights.

The Board wants all eligible voters to be fully informed about their rights under Federal law and wants both Employers and Unions to know what is expected of them when it holds an election

If agents of either Unions or Employers interfere with your right to a free, fair, and honest election, the election can be set aside by the Board   Where appropriate the Board provides other remedies, such as reinstatement for employees fired for exercising their rights, including backpay from the party responsible for their discharge.

The following are examples of conduct which interfere with the rights of employees and may result in the setting aside of the election:

- Threatening loss of jobs or benefits by an Employer or a Union
- Misstating important facts by a Union or an Employer where the other party does not have a fair chance to reply
- Promising or granting promotions, pay raises, or other benefits, to influence an employee's vote by a party capable of carrying out such promises
- An Employer firing employees to discourage or encourage union activity or a Union causing them to be fired to encourage union activity
- Making campaign speeches to assembled groups of employees on company time within the 24-hour period before the election
- Incitement by either an Employer or a Union of racial or religious prejudice by inflammatory appeals
- Threatening physical force or violence to employees by a Union or an Employer to influence their votes

---

**The National Labor Relations Board protects your right to a free choice**

Improper conduct will not be permitted. All parties are expected to cooperate fully with this agency in maintaining basic principles of a fair election as required by law  The National Labor Relations Board as an agency of the United States Government does not endorse any choice in the election

NATIONAL LABOR RELATIONS BOARD
an agency of the
UNITED STATES GOVERNMENT