585 F.2d 847
 99 L.R.R.M. (BNA) 3054, 84 Lab.Cas. P 10,869
 CERLO MANUFACTURING CORPORATION, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
Warehouse, Mail Order, Office, Technical and Professional
Employees Union Local No. 743, Intervenor.
 No. 78-1183.
 United States Court of Appeals,
Seventh Circuit.
 Heard Sept. 19, 1978.
Decided Oct. 24, 1978.
 
 R. Clay Bennett, Chicago, Ill., for petitioner.
 Richard A. Cohen, N. L. R. B., Washington, D. C., for respondent.
 Joel A. D'Alba, Chicago, Ill., for intervenor.
 Before CUMMINGS, PELL and WOOD, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 Cerlo Manufacturing Corporation has asked us to review a decision by the National Labor Relations Board finding that Cerlo's refusal to bargain with the Union[1] violated Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act (29 U.S.C. §§ 158(a)(1) and 158(a)(5)). 234 NLRB No. 61 (1978). Cerlo claims that the Union's certification under Section 9 of the Act (29 U.S.C. § 159) arising from a rerun representation election on May 12, 1977, was invalid because the prior election of October 6, 1976, in which the Union failed to obtain a majority was erroneously set aside. We agree and therefore deny the requested enforcement of the Board's order requiring Cerlo to bargain with the Union and to furnish it with the names, rates of pay, job classifications, hiring dates and present benefits of all unit employees as a predicate to bargaining.
 
 
 2
 On October 6, 1976, an election was held to determine whether the Union would be the exclusive bargaining representative for Cerlo's warehouse, production and maintenance employees at its Lockport, Illinois, plant. All 21 eligible voters cast ballots. Eight cast ballots for the Union, nine cast ballots against it, and four ballots were challenged. Three of the four challenges were sustained but the Board did not rule on the fourth since it would not affect the results of the election.
 
 
 3
 Under the September 2, 1976, Stipulation for Certification upon Consent Election executed by Cerlo and the Union, the Board's Regional Director was to prepare a notice of election and supply copies to the parties for posting.[2] No Labor Board notice of election was posted by Cerlo because it received none from the Board. However, on September 2, Cerlo posted a notice listing the date of the election and a description of the collective bargaining unit and also posted a copy of the Stipulation for Certification upon Consent Election listing the election details.
 
 
 4
 On October 13, 1976, the Union filed with the Regional Director certain objections with respect to the conduct of the election. The ninth objection was that Cerlo did not post an official Labor Board notice of election, "thereby depriving employees of an opportunity to be informed of a forthcoming election."
 
 
 5
 Commencing on October 19, 1976, Cerlo's counsel interviewed the 21 voters and obtained sworn statements from them to the following effect (with some slight variations):
 
 
 6
 "I was aware of the date and times during which the election was to be held, and I did, in fact, vote in the election on October 6, 1976. I have reviewed a xerox copy of Form NLRB-707 (7-72) for the October 6, 1976 election at Cerlo. Prior to the day of the election, I was aware of all the rights listed on the NLRB form which I had with respect to the election.
 
 
 7
 "My vote in the election, as cast, was an expression of my own free choice, and accurately represented my preference concerning collective bargaining representation."
 
 
 8
 These statements were filed with the Board and show that each voter knew of the rights of employees as listed on the Labor Board's notice of election form.[3]
 
 
 9
 On December 3, 1976, the Regional Director issued a report on the challenges and objections, upholding Union objection No. 9 because the Labor Board's notice of election had not been posted. Therefore, he recommended a second election. On April 7, 1977, the Board adopted his findings and recommendations and directed him to conduct a second election, which was held on May 12, 1977. In that election, a majority of the votes (the valid votes counted plus challenged votes) were cast for the Union and it was certified as the exclusive bargaining representative of these employees on May 20, 1977.
 
 
 10
 On June 9, 1977, Cerlo informed the Union that it would not bargain with the Union nor give it requested bargaining information on the ground that the Board had erroneously set aside the first election which the Union had lost. Therefore, the Union filed charges with the Board and its General Counsel issued a complaint asserting that Cerlo's refusals had violated Sections 8(a) (5) and (1) of the Act. On June 1, 1977, the Board granted its General Counsel's motion for summary judgment because the Union had been certified as the collective bargaining representative of these employees on May 20, 1977, as a result of the May 12, 1977, majority vote in favor of the Union. Consequently, Cerlo was ordered to bargain with the Union and to furnish necessary and relevant bargaining information. Cerlo was also required to post a specified notice.
 
 
 11
 The question before us is whether the first election should have been set aside because Cerlo did not post a Labor Board notice which it concededly never received. All eligible employees voted at that election and were informed of the details of the election through Cerlo's own September 2 postings. Each voter has sworn that he knew of his rights under the Act at the time of the election. Therefore, there was no interference with laboratory conditions essential for a free election.
 
 
 12
 We agree with Cerlo that Pegwill Packing Company, 115 NLRB 1151 (1956), is applicable. In Pegwill, as here, the Regional Director had recommended that a union objection be sustained because the employer posted its own notice of the election in the absence of receipt of an official posting notice from the Labor Board. The Board refused to adopt the Regional Director's recommendation because, as here, the employer had adequately apprised the employees of the issues in the election, all in the unit voted, and the union did not show that any of the voters did not understand the purpose of the election. In language applicable here, the Board stated:
 
 
 13
 "Even if we assume, contrary to the Employer's contention, that the employees were not informed by the Petitioner and the Employer of their basic rights under Section 7 of the Act to organize, bargain collectively, and engage in other concerted activities, we think it is fair to assume, in the absence of any evidence to the contrary, that the employees were aware of these long-established rights of labor.
 
 
 14
 "Under all the circumstances of this case, particularly the fact that all eligible employees voted and that the failure to post the official notices was not due to any fault of the Employer, we find that the deviation from our election procedure does not warrant setting the election aside * * *." 115 NLRB at 1154.
 
 
 15
 A fortiori in the present case the first election should not have been set aside because Cerlo adduced uncontested evidence that the voters were aware of their employee rights under Section 7 of the Act (29 U.S.C. § 157). The Board complains that absent the official Labor Board election notice, the Cerlo employees would not know of the Board's role in insuring their right to a "free, fair and honest" election (Br. 11). On the contrary, the official Stipulation for Certification upon Consent Election posted by Cerlo showed that the election was to be by secret ballot under the Regional Director's supervision, who the eligible voters were, that observers could be present to assist in the conduct of the election, to challenge voter eligibility and to verify the tally, and that the tally of ballots was to be by the Regional Director or his agent.[4] Cerlo's posting occurred over a month before the election and included a notice prepared by its attorney. This notice and the Stipulation remained on the employees' bulletin board until after the election even though the Regional Director never requested any posting as required by the Stipulation.[5] In these circumstances Cerlo's good faith cannot be gainsaid despite the Union's efforts to do so.[6]
 
 
 16
 In support of his ruling in the instant case, the Regional Director relied only on Overland Hauling, Inc., 168 NLRB 870 (1967), and Pyle-National Division of Harvey Hubbell, Inc., 197 NLRB 439 (1970). Neither case is apposite because in those cases the employers had folded the "Rights of Employees" section under the rest of the official notice, thus attempting to minimize its effect. In contrast, nothing in the record of this case impugns Cerlo's good faith or shows that it did not comply with the pre-election agreement.
 
 
 17
 National Labor Relations Board v. Kilgore Corp., 510 F.2d 1165 (6th Cir. 1975), also persuades us that the Board's order must be set aside. There the employer failed to post the Labor Board's official notice of election "in the proper places and far enough in advance of the election." Nevertheless, the court concluded that the union had not carried its burden of showing that the election was not fairly conducted because the delay in posting the Labor Board's notice was the Board's fault and, as here, the employer did not engage in any unfair labor practices during the first election. As in Kilgore, these employees, were alerted to the election by Cerlo's September 2 postings. There 98.8 per cent of the eligible employees voted in the original election, whereas here all the employees so voted. In Kilgore there was no evidence that the employees were not familiar with the long-established rights of labor, and here all voters signed sworn statements to this effect.[7] Consequently, the Sixth Circuit held that the Labor Board abused its discretion in setting aside the first election.
 
 
 18
 Kilgore And Pegwill establish that the Labor Board's January 24, 1978, decision and order in this case should be set aside, with enforcement denied.[8]
 
 
 
 [1]
 Warehouse, Mail Order, Office, Technical and Professional Employees Union Local No. 743, Affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America
 
 
 [2]
 The notices were to be in English and Polish to accommodate one employee who did not read English
 
 
 [3]
 The Board has objected to these post-election interviews as unreliable, since the employees might wish to avoid offending the employer. While we recognize the potential for abuse in such procedures, in the present case the Board has not pointed to any improper behavior of the employer in conducting the interviews and has not seriously suggested that the employees (including the Polish-speaking employee) were unaware of their rights
 
 
 [4]
 The Board pointed to the list of examples of improper conduct, the possibility of setting the election aside if such conduct occurred, and the remedies for improperly discharged employees as rights of which the employees were not informed by the notices posted by Cerlo. While we agree that these are important rights, in the circumstances of this case we do not think the fact that they were not officially communicated is sufficient to invalidate the election, since the employees have affirmed that they were aware of their rights, and neither the Board nor the Union have effectively refuted this
 
 
 [5]
 Paragraph 3 of the Stipulation for Certification upon Consent Election provided:
 "NOTICE OF ELECTION. The Regional Director shall prepare a Notice of Election and supply copies to the parties describing the manner and conduct of the election to be held and incorporating therein a sample ballot. The parties, upon the request of and at a time designated by the Regional Director, will post such Notice of Election at conspicuous and usual posting places easily accessible to the eligible voters."
 
 
 [6]
 The Board attempts to distinguish Pegwill on the ground that the employer in that case had notified the Board that it had not received the official notice, and posted its own version only when the second set of notices also failed to arrive. The Board thus seeks to impose an affirmative obligation on employers to seek out the official notices. In this case, Cerlo contends that since it had never before experienced a representation election, it thought the notice contained in the stipulation was the official notice. Its counsel, having itself received the official notice, had no reason to suspect that Cerlo had not. When counsel inquired of Cerlo officers whether they had posted the notice, they replied affirmatively, based on their good faith misunderstanding. Neither the Board nor the Union has challenged this version of events, nor have they explained why the Union waited until after the election to bring the failure to post to Cerlo's attention. We think that in these circumstances the Union's suggestion that Cerlo was in bad faith cannot be taken seriously. To impose an obligation on Cerlo to rectify the Board's error when it did not even know one had been made would be unfair and unnecessary
 
 
 [7]
 The Board also seeks to distinguish Pegwill on the ground that the employees' rights section of the official notice was expanded subsequent to that case, and that it is therefore now more important that it be posted. As indicated in note 4 Supra, we do not consider the rights not officially communicated here so substantially different from those in Pegwill as to require a different result. This conclusion is reinforced by the fact that the official notice in Kilgore was similar to the one here, not to the one in Pegwill
 
 
 [8]
 The Board is of course free to conduct further proceedings if any remaining Union objections to the first election are still viable