## NATIONAL LABOR RELATIONS BOARD, Petitioner,

### v.

## SUPERIOR COATINGS, INC., Respondent.

### No. 86–5587.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 18, 1986.

Decided Feb. 18, 1988.

Fred Cornell, argued, Aileen Armstrong, Deputy Associate General Counsel, N.L. R.B., Howard E. Perlstein, Washington, D.C., for petitioner.

Craig A. Mutch, argued, Grand Rapids, Mich., and J. Michael Guenther, Ann Arbor, Mich., for respondent.

Before MARTIN and GUY, Circuit Judges, and JOHNSTONE, District Judge.*

PER CURIAM.

This case is before us upon the application of the National Labor Relations Board (the Board), pursuant to section 10(e) of the National Labor Relations Act (the Act), as amended, 29 U.S.C. § 160(e), for enforcement of its order against Superior Coatings, Inc. (the Company). The Board found that the Company violated section 8(a)(5) of the Act, 29 U.S.C. § 158(a)(5), by refusing to bargain with the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW (the Union). The Company requests that the Board's application be denied and the bargaining order be set aside. The Company contends that the representation election was marred by threats and misrepresentations on the part of an employee who told certain co-workers that they would lose their jobs if the Union did not win the election. Upon review, we find substantial evidence in the record to support the findings of the Board, and grant the application for enforcement.

## I.

On August 30, 1984, a union representation election was held by secret ballot for a particular unit of employees who worked for the Company. Thirteen votes were cast in favor of union representation, eight votes against, and one ballot was challenged. Thus, a switch of three votes would have resulted in the Union losing the election. The Company filed timely objections to the election results. The Company alleged that on the day of the election, a union representative falsely attributed to a member of management a threat to discharge certain named employees in the event that the Union lost the election. The Company argued that this statement created a general environment of fear and reprisal which prevented a free election. The Company also contended that the election was tainted because management did not have an adequate opportunity to respond to the alleged misrepresentations before the vote took place.

A hearing was conducted on September 26, 1984. On December 5, 1984, the hearing officer issued a report and recommendation in which he recommended that the Company's objections be overruled and that the Union be certified. With respect to the Company's specific allegations of misconduct, the hearing officer found that the employee, Tammy Ward, told one of her co-workers, Donna Garrison, that Garrison and two other named employees would be fired if the Union lost the election. When Garrison questioned Ward as to the source of her information, Ward replied that one of the supervisors, Joe Wiseman, had told her that the three workers would be discharged. Two other workers had overheard the conversation between Ward and Garrison and the story spread throughout the plant prior to the election which was held later that day. Based on the testimony of several witnesses, including Ward and Wiseman, the hearing officer concluded that Wiseman had, in fact, previously told Ward that "he would be glad when the

---

* Honorable Edward H. Johnstone, United States District Court, Western District of Kentucky, sitting by designation.

union stuff was over so that he could get rid of employees who weren't doing their jobs," including Garrison and the two other employees. The hearing officer noted that Wiseman had tied the terminations to the end of the election, whereas Ward had suggested to Garrison that the dismissals would result in the event of a particular outcome, i.e., the Union losing the election.

Based on these findings, the hearing officer concluded that Ward's "threats" did not create a general atmosphere of fear and confusion which would render a free election impossible. The hearing officer also found that Ward's "misrepresentation" was not sufficiently objectionable to require that the election results be set aside.

The Company filed timely exceptions to the hearing officer's report. On June 5, 1985, a three-member panel of the Board issued a Decision and Certification of Representation, adopting the hearing officer's findings and recommendations and certifying the Union as the exclusive bargaining representative of the employees in the bargaining unit. Following the Company's refusal to engage in collective bargaining, the Union filed an unfair labor practice charge. On November 29, 1985, the Board issued its decision and order finding the Company guilty of committing unfair labor practices and ordering the Company to bargain with the Union upon request.

## II.

■ The standard for reviewing a Board finding of an unfair labor practice is set forth in section 10(e) of the Act, 29 U.S.C. § 160(e), which provides that the Board's findings of fact are conclusive "if supported by substantial evidence on the record considered as a whole." *See also NLRB v. State Plating & Finishing*, 738 F.2d 733, 737 (6th Cir.1984). This court has

previously stated that "[w]e will not lightly set aside the results of a NLRB-supervised representation election." *NLRB v. First Union Management, Inc.*, 777 F.2d 330, 336 (6th Cir.1985). The party who seeks to overturn the results of a representation election has the burden of showing that the election was not conducted fairly. *NLRB v. Basic Wire Products*, 516 F.2d 261, 263 (6th Cir.1975). To meet this burden, the objecting party must show "not only that the unlawful acts occurred, but also that they interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election." *NLRB v. McDonald's Industrial Products*, 731 F.2d 340, 342 (quoting *NLRB v. Golden Age Beverage Co.*, 415 F.2d 26, 30 (5th Cir.1979)). With these general standards in mind, we now consider the Company's contention that the election results should be overturned because of Ward's threats to Garrison that she and others would lose their jobs if the Union was defeated.

■ It is well established that the threatening behavior or misconduct of a Union agent is given more weight than that of a third party when determining whether or not the election should be set aside. *Cf. ATR Wire & Cable Co. v. NLRB*, 752 F.2d 201 (6th Cir.1981) (per curiam).[1] In adopting the hearing officer's report and recommendation, the Board expressly refrained from ruling on the officer's finding that Ward had not acted as a Union agent. Rather, the Board assumed, *arguendo*, that Ward was a Union agent. Therefore, the question is whether Ward's statement to Garrison, "'reasonably tend[ed] to interfere with the employees' free and uncoerced choice in the election.'" *See Baja's Place*, 268 NLRB 868 (1984).[2]

---

1. The hearing officer found that Ward was not a Union agent. Under those circumstances, the appropriate test is whether the actions of a mere Union "adherent" were "sufficiently substantial in nature to create a general environment of fear and reprisal such as to render a free choice of representation impossible...." *Hickman Harbor Service v. NLRB*, 739 F.2d 214, 220 (6th Cir.1984) (quoting *Methodist Home v. NLRB*, 596 F.2d 1173, 1183 (4th Cir.1979)). After finding

that Ward's conduct did not violate this standard, the hearing officer went on to conclude that Ward's actions would not cause the election to be set aside even when viewed under the more rigorous standard which governs the conduct of union agents.

2. Both parties apparently agree that this is the test we should apply on appeal. We note, however, that although the Company urges us to

■ Given the undisputed facts in this case, we find ample evidence in the record to support the Board's conclusion that Ward's statements to Garrison did not interfere with the right to a free and fair election. The "threat" of dismissal originated with a management representative, Joe Wiseman. Ward merely repeated the threat to Garrison who was named by Wiseman as one of the workers targeted for termination. Wiseman had given specific instances of poor performances as the grounds for dismissal and Ward related these to Garrison. By raising the spectre of impending dismissals, Ward implied that, if elected, the Union could protect the employees from losing their jobs. This type of last-minute campaigning, which stresses the benefits of union representation in terms of job security, should be distinguished from situations in which a union representative suggests that workers will be fired in direct retaliation for voting against the union. *Cf. Wilkinson Manufacturing Co. v. NLRB,* 456 F.2d 298, 302 (8th Cir.1972) (union field representative had stated to an anti-union employee "that if the union got in it 'had ways' of getting rid of non-union employees"). Thus, the Board could have reasonably concluded that Ward's warning to Garrison regarding the planned post-election firings was a permissible partisan appeal for union support. As we recently stated in *Tony Scott Trucking, Inc. v. NLRB,* 821 F.2d 312 (6th Cir. 1987) (per curiam), "The simple fact that one employee urged another to vote for union representation does not merit the setting aside of a representation election." *Id.* at 316.

In considering the record as a whole, we also note the lack of certain types of evidence. Ward's comments to Garrison were the only acts of Union misconduct alleged by the Company. In contrast to many cases involving allegations of misconduct during the course of a union representation campaign, it appears from the record that this election campaign was entirely free of violence, vandalism, or even threats of violence.[3] In sum, we find substantial evidence in the record to support the Board's conclusion that Ward's statement to Garrison did not unreasonably interfere with the employees' right to a free and fair election.

### III.

■ Having found substantial evidence in the record to support the Board's determination with respect to the issue of coercion, we now consider the separate but related issue of whether Ward's statements amounted to a misrepresentation which would require that the election results be set aside. In recent years, the Board has adopted and rejected several different standards for determining whether a representation election should be overturned because of false or misleading campaign statements.[4] In *Van Dorn Plastic Machinery Co. v. NLRB,* 736 F.2d 343, 345 (6th Cir.1984), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1173, 84 L.Ed.2d 323 (1985), we noted that "[a]fter much vacillation [the Board] appears to have settled on a standard, stated in *Midland National Life Insurance Co.,* 263 NLRB 127 (1982)...." In *Midland,* the Board stated:

In sum, we rule today that we will no longer probe into the truth or falsity of the parties' campaign statements, and that we will not set elections aside on the basis of misleading campaign statements. We will, however, intervene in cases where a party has used forged documents which render the voters un-

---

adopt the stricter standard which is applied to union agents, in its briefs on appeal it has framed the issue in terms of the more lenient standard, *supra,* note 1, which is used to judge the conduct of third parties.

**3.** *Compare Hickman Harbor Service v. NLRB,* 739 F.2d 214, 219 (6th Cir.1984) (evidence showed anti-union employees were physically assaulted and their cars were vandalized thereby creating an "atmosphere of fear and coercion ... which prevented a fair and free election"),

with *ATR Wire & Cable Co. v. NLRB,* 752 F.2d 201, 202 (6th Cir.1985) (threats of violence and isolated acts of vandalism not sufficient reason to overturn election of Union), and *NLRB v. Bostik Div.,* 517 F.2d 971, 975 (6th Cir.1975).

**4.** For a critical summary of the various standards applied by the Board, see Judge Posner's opinion in *Mosey Mfg. v. NLRB,* 701 F.2d 610 (7th Cir.1983) (en banc).

able to recognize propaganda for what it is. Thus, we will set an election aside not because of the substance of the representation, but because of the deceptive manner in which it was made, a manner which renders employees unable to evaluate the forgery for what it is. As was the case in *Shopping Kart*, we will continue to protect against other campaign conduct, such as threats, promises, or the like, which interferes with employee free choice.

*Van Dorn*, 736 F.2d at 345 (quoting *Midland*, 263 NLRB at 133).[5]

In *Van Dorn*, we found that the alleged misrepresentations, which consisted of a union flyer describing various wage scales, did not amount to a forgery. 736 F.2d at 347. The *Van Dorn* court, relying on the language from *Midland* quoted above, went on to state in dictum:

> There may be cases where no forgery can be proved, but where the misrepresentation is so pervasive and the deception so artful that employees will be unable to separate truth from untruth and where their right to a free and fair choice will be affected. We agree with the Board that it should not set aside an election on the basis of the substance of representations alone, but only on the deceptive manner in which representations are made.

*Van Dorn*, 736 F.2d at 348 (citation omitted).

The instant case does not involve a forged or altered document; therefore, the Board's ruling in *Midland* is not directly applicable. Nevertheless, the Company argues that Ward's misrepresentation to Garrison was "so pervasive and the deception so artful" that employees could not detect their falsity and, hence, their right to a free

election was adversely affected. We find this argument without merit.

First, we note that Ward's account to Garrison of what Wiseman had told her was substantially correct. The hearing officer found that Wiseman had told Ward that he planned to fire three specific workers because of their poor job performance. Ward accurately related this information to Garrison. The hearing officer found that the only discrepancy was that "Ward threatened Garrison that she and two other employees would be terminated if [the Union] lost the election, whereas Wiseman stated to Ward that he would be glad when the election campaign was over so that he could get rid of certain employees who weren't doing their jobs." The only possible significance of Ward's "misrepresentation" was that Garrison might have been led to believe that Wiseman shared Ward's view that, if elected, the union could successfully prevent the firings. Ward faithfully recounted to Garrison the names of the people that Wiseman intended to fire and his specific reasons for doing so. To the extent that there was any misrepresentation, we find that it was not "pervasive" nor particularly "artful" so as to require that the election results be set aside.

■ The Company also argues that Ward's misrepresentations were made a mere seven hours prior to the election and, therefore, it did not have an adequate opportunity to rebut her false statements. In light of our finding that Ward's statements to Garrison were substantially correct, and that the portion which might be characterized as false or misleading was essentially insignificant, we are unwilling to overturn the Board approved election on the basis that management was unable to respond to Ward's "false threats." Furthermore, we note that even if we were to accept this line

---

5. In *Van Dorn*, one of the issues on appeal was whether the Board had acted properly in applying a new set of standards for evaluating campaign misrepresentations. Accordingly, our standard of review was whether the Board had "abused its discretion" in adopting the new rules. 736 F.2d at 347. Now, however, the standard set forth in *Midland* is firmly established. Therefore, the proper standard of review of a Board decision applying that test to a

specific set of facts is whether the Board's decision is supported by substantial evidence. *See NLRB v. State Plating & Finishing Co.*, 738 F.2d 733, 738 n. 4 (6th Cir.1984). Thus, in the instant case, our analysis of the "misrepresentation" issue in Part III is governed by the same standard of review which we applied to the "coercion" issue in Part II, i.e., the substantial evidence test.

of reasoning, the record shows that Garrison told one of the owners of the Company about her conversation with Ward and the threats of dismissal. Thus, it would appear that the management was notified of Ward's alleged misstatements and could have taken steps to dispel whatever misconceptions that may have arisen in the minds of the employees.

Because we find substantial evidence in the record to support the Board's decision, we hereby grant the application for enforcement of the Board's order.