**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SHRADER'S, INC., Respondent.**

**No. 90–5205.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 5, 1990.

Decided March 15, 1991.

Aileen A. Armstrong, Deputy Associate General Counsel, Paul J. Spielberg, Karen L. Arndt (argued), N.L.R.B., Office of the General Counsel, Washington, D.C., Emil C. Farkas, Regional Director, N.L.R.B., Region 9, Cincinnati, Ohio, for petitioner.

Brett L. Thurman (argued), Fred A. Ungerman, Jr., Kathleen M. Whalen, Coolidge, Wall, Womsley & Lombard, Dayton, Ohio, for respondent.

Before NELSON and NORRIS, Circuit Judges; and HIGGINS, District Judge.*

ALAN E. NORRIS, Circuit Judge.

The National Labor Relations Board petitions this court pursuant to 29 U.S.C. § 160(e) for enforcement of its order requiring Shrader's, Inc., to bargain. The NLRB ruled that the company violated sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (5), by refusing to bargain with the United Automobile, Aerospace & Agricultural Implement Workers of America, the elected and certified bargaining representative of the company's production and maintenance employees. The company attacks the validity of the certification and contends that it was entitled to an evidentiary hearing on its objections to the representation election.

Shrader's is in the business of retreading and repairing tires in Greenville, Ohio. On May 11, 1988, the union filed a representation petition with the NLRB seeking certification as the bargaining representative for the company's production and maintenance employees. The petition was granted and, in a representation election held on July 8, the union prevailed. Of the sixty-three ballots cast, thirty-four were for the union, twenty-eight were against the union, and one vote was challenged.

The company filed timely objections to the election claiming that union supporters engaged in improper electioneering by distributing at the plant before, between, and during voting periods, hats and T-shirts with union insignias.[1] The regional director of the NLRB investigated the objections and recommended they be overruled without an evidentiary hearing.

The company's employees worked three different shifts—7:00 a.m. to 3:00 p.m.; 3:00 p.m. to 11:00 p.m.; and 11:00 p.m. to 7:00 a.m. The polls were open on election day for two sessions—the first from 6:45 a.m. to 7:30 a.m., and the second from 11:30 a.m. to 3:30 p.m. In this manner, employees working all three shifts—starting with the late shift which began the day before—could vote in the special area designated within the plant. On the morning of election day, Rick Forney, an employee who supported the union, picked up ten T-shirts and ten hats from a union representative for distribution to workers. Forney took the apparel to work with him at 2:30 p.m. and proceeded to a picnic table near the plant entrance where he distributed them to company employees.

The four affidavits proffered by the company in support of its objections were from three employees who voted in the election and a supervisor. The first affiant declared that he had heard, second-hand, that hats and T-shirts were distributed during voting periods; the second affiant stated that he saw another employee, who ap-

---

* The Honorable Thomas A. Higgins, United States District Judge for the Western District of Tennessee, sitting by designation.

1. Shrader's also objected to a victory celebration by union supporters held while the polls were still open. This objection was withdrawn on appeal.

peared to be Rick Forney, handing out hats and T-shirts at a picnic table located near the plant's entrance at 2:45 p.m. on election day; the third, a supervisor, said he witnessed Forney, who had been an active union supporter during the weeks prior to the election, distribute hats and T-shirts at the picnic table at 2:40 p.m., and that all employees coming into work would have passed by or near Forney; and the fourth stated that he worked the shift which began at 11:00 p.m. and saw Bill Norvell, who was widely known by Shrader's workers to be a union supporter, distributing the hats during that shift, and that employees "who did not have hats at the beginning of the 11:00 p.m. shift were wearing them immediately before and during the election period which began during the workshift," and that the distribution "was unfairly coercive, and gave the appearance union supporters would be rewarded."

The regional director concluded that the company's objections did not raise substantial or material issues of fact with respect to the validity of the election, and that, as a consequence, an evidentiary hearing was not necessary. He recommended that the objections be overruled and that the union be certified as the exclusive bargaining agent. The NLRB adopted the regional director's recommendation and certified the union.

On December 22, 1988, the union filed unfair labor practices charges against the company alleging that it failed and refused to bargain collectively, in violation of the NLRA. The company admitted that it refused to bargain, but attacked the validity of the certification. The general counsel of the NLRB issued a complaint against the company and, on February 15, 1989, moved for summary judgment which was granted by a three-member panel of the NLRB. The Board ordered the company to cease and desist from refusing to bargain with the union and to furnish information relevant to performance of the union's function as exclusive collective bargaining representative. On February 2, 1990, the NLRB made application to this court for enforcement of its order pursuant to 29 U.S.C. § 160(e).

The NLRB has broad discretion in establishing and administering representation election rules, *NLRB v. Hyatt Hotels, Inc.*, 887 F.2d 109, 111 (6th Cir.1989), and in resolving representation disputes, *NLRB v. Basic Wire Prods., Inc.*, 516 F.2d 261, 263 (6th Cir.1975). Therefore, in reviewing NLRB decisions, the scope of the court's review centers around ascertaining whether the NLRB abused the discretion entrusted to it by Congress to resolve fairly any disputes arising out of representation elections. *See NLRB v. A.J. Tower Co.*, 329 U.S. 324, 330, 67 S.Ct. 324, 327–28, 91 L.Ed. 322; *NLRB v. Kilgore Corp.*, 510 F.2d 1165, 1167 (6th Cir.1975). Findings of fact by the NLRB are conclusive "if supported by substantial evidence on the record considered as a whole." NLRA § 10(e), 29 U.S.C. § 160(e); *NLRB v. Superior Coatings, Inc.*, 839 F.2d 1178, 1180 (6th Cir. 1988). The party seeking to overturn the results of a representation election shoulders the burden of showing that the election was not conducted fairly; it must establish that unlawful conduct occurred which interfered with employees' exercise of free choice to such an extent that it materially affected the result of the election. *Id.* at 1180.

The company argues that the affidavits it filed in support of its objections to the election showed that union supporters interfered with employees' exercise of individual choice by distributing hats and T-shirts before, between, and during voting periods, as a bribe or reward for voting for the union. It contends that these improper activities on election day had such an impact that the election should be set aside and that, since substantial and material issues of fact were raised in its objections, an evidentiary hearing was required. The NLRB argues that the company did not present evidence of any fact at variance with those assumed by the regional director and that it failed to prove misconduct on the part of union supporters which would warrant setting aside the election. We do not set aside NLRB decisions for failure to grant an evidentiary hearing on

election disputes unless the objections raise substantial and material factual issues which, if proven, would invalidate the union's certification. *Basic Wire Prods.*, 516 F.2d at 263–64.

> The Board's regulations permit the Regional Director to consider challenges and objections to an election based on an administrative investigation without a hearing if the objections raise no substantial and material factual issues in dispute which more appropriately may be resolved after a hearing. *See* 29 C.F.R. § 102.69(d). The party seeking a hearing must clearly demonstrate that substantial and material facts are in dispute by making specific allegations and a proffer of proof which prima facie would warrant setting aside the election.

*NLRB v. Pinkerton's, Inc.*, 621 F.2d 1322, 1325 (6th Cir.1980) (citations omitted).

The Board cites our opinions in *ATR Wire & Cable Co. v. NLRB*, 671 F.2d 188, 190 (6th Cir.1982), and *Prestolite Wire Div. v. NLRB*, 592 F.2d 302, 306 (6th Cir.1979), for the proposition that a party raises substantial and material questions of fact only when its factual allegations and offers of proof are facially sufficient to establish a *prima facie* case for setting aside an election. Since the Board labors to distinguish the facts in this case from those in *Owens–Illinois, Inc.*, 271 N.L.R.B. 1235 (1984), we assume that even the Board would agree that the company will have made out a *prima facie* case if its evidentiary submissions approximate the circumstances that existed in *Owens–Illinois*.

In *Owens–Illinois*, the union won a challenged election by a vote of 41–36. However, between the first and second voting sessions, the union's business representative had handed out about twenty-five jackets, costing the union $16 each and containing union insignia, to employees who came to his hotel room. Five or six recipients had not yet voted when they received the jackets. The regional director concluded that this giving of gifts was not objectionable because there was no evidence that the jackets were given conditioned upon a

promise to vote for the union. The Board disagreed, pointing out that

> distribution of these jackets was objectionable conduct. While only five or six employees received jackets before voting, the vote tally and our disposition of the challenged ballots show that five or six votes could have determined the election's results. Moreover, these jackets were not given away during the preelection campaign but on election day itself; distributed as they were between voting sessions, they could well have appeared to the electorate as a reward for those who had voted for the Petitioner [the union] and as an inducement for those who had not yet voted to do so in the Petitioner's favor.

*Owens–Illinois*, 271 N.L.R.B. at 1235.

In spite of the regional director's efforts to ignore or discredit the company's evidence, and to credit fully the "testimony" of Forney which does not appear in the record, we cannot say, in the absence of an evidentiary hearing, that the facts before the director in this case can be distinguished from the facts in *Owens–Illinois*. In our case, the union won the election by a vote of 34–28, and Forney, a supporter of the union, received twenty articles of apparel from a union representative at his motel between the first and second voting sessions. Forney took the apparel to a picnic table near the plant entrance during the second voting session, where he distributed it to employees whom he ascertained had already voted. According to employee Melvin Clawson, Bill Norvell, another union supporter, distributed hats imprinted with language in support of the union during the shift which ended fifteen minutes after the polls opened for the first voting session, and employees on that shift began wearing the hats immediately before and during that election session. Clawson found the circumstances surrounding the distribution of the hats to be "unfairly coercive, and gave the appearance union supporters would be rewarded."

The regional director indicated that an "investigation" of the company's objections had been made, but the agency file includes

no affidavits or other record of an investigation, except the director's summary of what "Union witnesses ... testified to." Accordingly, the record before the Board and this court is inadequate to support enforcement of the Board's order because we cannot determine whether the director fairly and accurately characterized the stories of the union's witnesses or whether their version of events should be credited over those of the company's witnesses.[2] According to the regional director's summary, he made no effort to verify information included in the affidavits filed by the company. For example, although the director discredited Clawson's affidavit because it did not include whether he "personally observed this activity," the director made no inquiry into the extent of Clawson's personal knowledge. The director also failed to verify an account included in an affidavit prepared for Earl Curry's signature, but which, according to a handwritten notation, was not signed by Curry because he did not want to "get anyone in trouble." This was hardly the kind of investigation which should be given preclusive effect under any concept of fundamental fairness. The regional director, in recommending that the objections be summarily overruled, relied upon a facially inadequate investigation, made credibility determinations and weighed conflicting evidence without the benefit of a hearing, and strictly construed against it the evidence submitted by the company.[3]

Furthermore, we are confused by the agency's internal fussing over whether these hats and shirts may have cost a few pennies more or less than the jackets in *Owens–Illinois*. Manifestly, precise monetary measure of value was not the question in *Owens–Illinois*, and it should not be the question in this case. The inquiry, as it is relevant to a charge of improper electioneering, concerns the potential of the gifts to influence voting decisions: Are the articles sufficiently valuable and desirable in the eyes of the person to whom they are offered, to have the potential to influence that person's vote? Although workers may be willing to accept campaign buttons and bumper stickers to show support for a union, those articles have little potential to "purchase" or otherwise unduly influence a vote, especially when contrasted with attractive ball caps, T-shirts, and jackets. Viewed in this context, there is no meaningful distinction between the apparel offered in *Owens–Illinois* and the apparel offered in this case.

The Board has asked this court to enforce one of its orders, or, in effect, to make it our own. Our mission is not to rubber-stamp the order, no questions asked. Instead, in the course of determining whether the Board has abused the discretion entrusted to it by Congress to adjudicate representation disputes fairly, we must satisfy ourselves that the Board's order is the product of procedures which are fundamentally fair. This we are unable to do upon the record before us because the company did not receive a fair opportunity to present its case.

The objections and supporting affidavits submitted by the company made out a *prima facie* case for invalidating the election; therefore, no matter what evidence the regional director's "investigation" produced, the company had clearly demonstrated that substantial and material facts were in dispute, and that proper resolution of the dispute demanded an evidentiary hearing. The director was in no position to recommend that the Board summarily overrule the objections. Since the Board adopted the regional director's report without the benefit of evidence from the director's investigation, and since the Board was required to give the company an evidentiary hearing under the circumstances of this case, but refused to do so, the Board has

---

**2.** We have repeatedly held that the Board abuses its discretion by adopting a regional director's report if the director fails to transmit to the Board all the evidence upon which he relies. *See, e.g., ATR Wire & Cable Co.,* 671 F.2d at 190.

**3.** In *Prestolite Wire Div.,* 592 F.2d at 306–07, under similar circumstances, we held that a court of appeals is warranted in construing most favorably to the objecting party the factual assertions contained in its objections.

abused the discretion entrusted to it by Congress.

The application is denied.