4 F.3d 993
 144 L.R.R.M. (BNA) 2616
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
AWB METAL DIVISION OF MAGNODE CORPORATION, Petitioner/Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent/Cross-Petitioner,
and
International Union, United Automobile, Aerospace and
Agricultural Implement Workers of America, UAW, Intervenor.
 Nos. 92-5867, 92-6011.
 United States Court of Appeals, Sixth Circuit.
 Aug. 9, 1993.
 
 Before: MERRITT, Chief Judge; JONES and NELSON, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 Petitioner, AWB Metal Division of Magnode Corporation ("Company") and the cross-applicant, the National Labor Relations Board ("Board") seek review and enforcement respectively of the Board's June 24, 1992 order requiring the Company to cease and desist its unfair labor practices against the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("Union"). The Company claims that they had no duty to bargain with the Union because the Union should not have been certified by the Board. On the night before the election, the Union had distributed material that the Company claims was so materially altered that the workers were denied their right to make a free and fair choice of representatives. We disagree and grant the Board's petition for enforcement of its order.
 
 I.
 
 2
 The NLRB conducted the election at the AWB plant in which employees voted for or against representation by the Union. In the afternoon and evening before the election, the Union distributed a handout identified as "highlights" of a contract between AWB and its employees at a unionized plant. The Union attached a letter to the "highlights" stating that the full contract was so large they "couldn't include it all. But, we have copies. If you want to see it, call us!"
 
 
 3
 The Union won the election and the Company filed two timely objections to the election based on the altered contract. AWB objected to the portion of the "highlights" pertaining to the wage rates at the other plant. The Union included the pay rate schedule but left out a footnote that explained that the wages would be phased in over time. The employees would receive only 70% of the listed wages in their first year and would not reach 100% of those figures until they were with the Company for six years or more. The Union also left out the page numbers of the contract so that it was not apparent where pages had been deleted. The Company also requested a hearing so they could gather and present evidence of the Union's intent to defraud the employees.
 
 
 4
 The Board overruled the objections and certified the results after finding that these alterations did not make the document a forgery as defined by the board in Midland National Life Insurance Co., 263 N.L.R.B. 127 (1982). The Company refused to recognize or bargain with the Union. The Union filed a charge of unfair labor practices, alleging failure to provide information and bargain in violation of sections 8(a)(5) and 8(a)(1) of the National Labor Relations Act ("NLRA"). The Company admitted the specific allegations but defended their actions on the basis that the certification should not have been granted. The Board granted summary judgment and issued an order requiring the Company to cease and desist these practices. The instant appeal and enforcement request followed.
 
 II.
 
 5
 The Board's finding that an election was conducted under fair conditions will not be disturbed on appeal where there is substantial evidence in the record as a whole to support its conclusions. 29 U.S.C. Sec. 160(e); Kux Mfg. Co. v. NLRB, 890 F.2d 804, 808 (6th Cir.1989); Universal Camera Corp v. NLRB, 340 U.S. 474 (1951). The party seeking to overturn an election bears the burden of showing that it was not conducted fairly. NLRB v. Superior Coatings, Inc., 839 F.2d 1178, 1180 (6th Cir.1988) (citing, NLRB v. Basic Wire Products, 516 F.2d 261, 263 (6th Cir.1975). The objecting party must show, "not only that the unlawful acts occurred, but also that they interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election." Id., at 1180 (quoting, NLRB v. McDonald's Industrial Products, 731 F.2d 340, 342 (6th Cir.1984).
 
 
 6
 When an objection is based upon allegations of campaign literature, the Board and the courts have uniformly applied the standard set forth in Midland National Life Insurance Co., 263 N.L.R.B. 127 (1982). Under Midland, the Board and the Courts will not:
 
 
 7
 probe into the truth or falsity of the parties' campaign statements, and ... will not set elections aside on the basis of misleading campaign statements. [They] will, however, intervene in cases where a party has used forged documents which render the voters unable to recognize propaganda for what it is. Thus, [they] will set an election aside not because of the substance of the representation, but because of the deceptive manner in which it was made, a manner which renders employees unable to evaluate the forgery for what it is.
 
 
 8
 Midland, 263 NLRB at ----, 1982 NLRB LEXIS 572, * 27. This circuit has followed this standard for more than ten years. See NLRB v. Superior Coatings, Inc., 839 F.2d 1178, 1181-82 & n. 5 (6th Cir.1988); Van Dorn Plastic Machinery Co. v. NLRB, 736 F.2d 343, 348 (6th Cir.1984) cert. denied, 469 U.S. 1208 (1985). The Midland standard was based on the premise that employees are sufficiently sophisticated to recognize propaganda for what it is and weigh it accordingly. A court will only interfere "where it appeared that employees were deceived as to the source of campaign propaganda by trickery or fraud, and that they could therefore neither recognize nor evaluate propaganda for what it was." Midland at 133. (emphasis added). There is no doubt as to the source of these materials. The Union logo was clearly present on the front and the attached document was clearly identified as highlights of the contract, not the full contract between the Company and the employees of the other plant. Under Midland we need not examine the fairness of its representation because the workers were on notice that this was propaganda.
 
 
 9
 The Company also argues that the election should have been set aside under the exception to Midland set forth in dictum in Van Dorn, 736 F.2d at 348 (6th Cir.1984):
 
 
 10
 There may be cases where no forgery can be proved, but where the misrepresentation is so pervasive and the deception so artful that employees will be unable to separate truth from untruth and where their right to a free and fair choice will be affected.
 
 
 11
 The union's deception here does not rise to this level. Although the hand-out clearly painted a deceptively rosy picture of the Union contract, nothing in it was completely false. The wages were, in fact, higher at the other plant. Although the employees were not receiving the full amounts listed in the table, they would receive those amounts eventually and the Union said as much in its letter.
 
 
 12
 Finally the Company argues that it was entitled to a hearing prior to the Board's decision. We have held that a hearing is only required when "substantial and material factual issues are raised." NLRB v. Tennessee Packers, Inc., Frosty Morn Division, 379 F.2d 172, 178 (6th Cir.1967) cert. denied, 389 U.S. 958 (1967). There is no evidence of such issues here. The basic facts of the case are undisputed; the Board merely had to apply the Midland standard to those facts, so no hearing was required.
 
 III.
 
 13
 Because the Union's misrepresentations do not rise to the level of forgery and are not so "artful" as to interfere with the fairness of the election, the Board had substantial evidence to certify the Union. Based upon the foregoing, we deny AWB's petition for review and we grant the Board's petition for enforcement.