41 F.3d 1507
 147 L.R.R.M. (BNA) 2662
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
SPILLMAN COMPANY, Petitioner/Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent/Cross-Petitioner.
 Nos. 93-5754, 93-5876.
 United States Court of Appeals, Sixth Circuit.
 Sept. 29, 1994.
 
 Before: JONES and BATCHELDER, Circuit Judges; and HOOD, District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner seeks review and National Labor Relations Board seeks enforcement of a Board decision and order finding that Petitioner violated federal labor law by withdrawing its recognition of the Union. Because the Board's conclusions are supported by substantial evidence we AFFIRM their decision and instruct Petitioner to comply with the Board's order.
 
 I.
 
 2
 On January 18, 1990, Spillman Company's ("Spillman") production and maintenance employees voted 11 to 7 in favor of being represented by the International Association of Sheet Metal Workers, Local Union No. 24 (the "Union"). After the Union was certified as the exclusive representative of the employees, it began negotiating with Spillman, meeting 18 times between October 15, 1990, and July 1, 1991, in hopes of reaching a collective bargaining agreement. The Union's negotiators were its business agent, David Booth, and several employees; Spillman's principal spokesperson was Gregory Scott.
 
 
 3
 By July 1, 1991, the parties had not reached an agreement on the issues of insurance and wages. At the July 1 meeting, Spillman presented what it termed its "final offer," which included a proposal for merit based wage increases. The Union rejected Spillman's proposal because it considered the wage offer too be to low, however, Union spokesperson Booth indicated that he would be willing to meet with Spillman's negotiators again and that he was hopeful that an agreement could be reached. Spillman spokesperson Scott declined, saying, "There's no need to meet to discuss [the offer] any further. If you have questions about it, give me a call. Or if you accept it, just sign it and send it to me." J.A. at 89. Following the meeting with Scott, Booth and the other employee negotiators determined that Spillman's offer did not warrant being presented to the employees for a vote.
 
 
 4
 In August 1991, Booth called Scott but was unable to reach him. In October, Booth again tried to reach Scott to inquire about resuming bargaining, but again he was unable to reach Scott. Scott denies receiving either call from Booth and did not return either call. Spillman Br. at 7. Booth did not attempt to follow up either call by mail or by telecopy. J.A. at 76.
 
 
 5
 On September 1, 1991, Spillman implemented its proposed merit based wage increases. According to Spillman vice-president and general manager Thomas Coniglio, the Union did not complain or respond in any other way to this action. J.A. at 92.
 
 
 6
 On January 14, 1992, Booth called Scott and left a message requesting further bargaining. Scott returned this call on January 17, but declined Booth's request for a meeting, stating that he was unsure whether he (Scott) still represented Spillman. J.A. at 69-70. Booth later received a letter from Spillman President Theodore Coons, dated January 27, 1992, which informed Booth that Spillman was withdrawing recognition of the Union. The letter stated in relevant part:
 
 Dear David:
 
 7
 I have recently learned from Greg Scott of a recent inquiry you have made to him. It is the position of the Spillman Company that the Sheet Metal Workers no longer represents the bargaining unit employees at our company, as we have heard nothing from you since the company gave you its last offer on July 1, 1991.
 
 
 8
 In the intervening period, there has been an across-the-board change in wages, a complete semi-annual review of all our associates, and the imposition of merit increases as warranted by performance.
 
 
 9
 Furthermore, a significant number of new associates have joined the company since the last negotiating session, and well over half of them have joined the company since the representation election. You have not even held meetings with them since last summer.
 
 
 10
 J.A. at 107. Both parties stipulate that between the July 1, 1991 meeting and the January 27, 1992 letter from Coons, no Spillman employee contacted any Spillman representative and expressed their desire to no longer have the Union represent them. J.A. at 55, 106.
 
 
 11
 Based on these facts, a three-member panel of the National Labor Relations Board (the "Board"), affirmed the administrative law judge's findings and conclusion that by withdrawing recognition of the Union without a good faith doubt as to the Union's majority status, Spillman had violated Section 8(a)(1) and (5) of the National Labor Relations Act, which is codified at 29 U.S.C. Sec. 158(a)(1) and (5). The Board adopted the administrative law judge's order which directed Spillman to cease and desist from its refusal to recognize the Union, and from "any like or related means interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act." J.A. at 17, 56. The Board additionally ordered Spillman to recognize and, upon request, bargain with the Union. Once an agreement was reached, the Board ordered that Spillman embody the terms of that agreement in a written document.
 
 
 12
 This appeal by Spillman followed. The Union filed a timely cross-application for enforcement of the Board's order.
 
 II.
 
 13
 Spillman contends that the Board erred in finding that the company withdrew recognition of the Union without a good faith doubt of the Union's majority status. Thus, Spillman is challenging a factual determination made by the Board. In general, an agency's factual determinations will be affirmed by this court if the determination is supported by "substantial evidence." NLRB v. Schrader's Inc., 928 F.2d 194, 196 (6th Cir.1991). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The substantial evidence standard also applies to the agency's application of law to fact and insulates from reversal the agency's reasonable inferences from the facts. NLRB v. Ohio Masonic Home, 892 F.2d 449, 451 (6th Cir.1989). We must, therefore, determine whether the Board's finding that Spillman Company withdrew recognition of the Union without a good faith doubt of the Union's majority status was supported by substantial evidence on the record.
 
 III.
 
 14
 Under section 8(a)(5) of the National Labor Relations Act, it is an unfair labor practice for a employer to refuse to bargain collectively with the representatives of its employees. 29 U.S.C. Sec. 158(a)(5). "Upon certification by the NLRB as the exclusive bargaining agent for a unit of employees, a union enjoys an irrebuttable presumption of majority support for one year." NLRB v. Curtin Matheson Scientific, Inc., 494 U.S. 775, 777-78 (1990) (citing Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 37 (1987)). "After the first year, the presumption continues but is rebuttable." Curtin Matheson, 494 U.S. at 778. An employer may rebut the presumption of majority status by demonstrating (1) that in fact, the union does not enjoy majority status or (2) that "the employer had a good faith doubt, founded on a sufficient objective basis, of the union's majority support." Id. (emphasis added).
 
 
 15
 Spillman argues that this court should reverse the Board's decision because the withdrawal of Union recognition was based on a good faith belief that a majority of the employees no longer supported the Union. To support this position, Spillman relies solely on the similarity between the facts of this case and those at issue in Southern Wipers, Inc., 192 NLRB 816 (1971), where the employer was found to have a good faith belief that the union lacked majority status. However, we agree with the Board's distinction between Southern Wipers and the case at bar.
 
 
 16
 It is true that both the present case and Southern Wipers involved unilateral implementation of merit increases by the employer without objection from the union. Both cases also involved an extended bargaining hiatus, during which time there was heavy employee turnover. However, unlike Southern Wipers, at no time did Spillman employees express dissatisfaction with the union, a fact which the Board accorded great weight in distinguishing the cases.
 
 
 17
 Significantly, in this case, unlike Southern Wipers, there is no evidence that the Respondent's employees expressed to the Respondent dissatisfaction with the Union. The parties stipulated: 'Between July 1, 1991, and January 27, 1992, no employees of Respondent expressed to Respondent the desire that the Union no longer represent them.' This factor is critical. We require that an employer come forward with specific evidence of employee dissatisfaction with the Union and we will not rely on unsupported assumptions in this regard.
 
 
 18
 J.A. at 55 (internal citations omitted).
 
 
 19
 Moreover, while there may have been significant employee turnover during the six-month bargaining hiatus, Spillman has offered no evidence--nor does it claim--that the new employees did not support the Union. The Board found that
 
 
 20
 it is this sort of evidence, totally absent here, which an employer must have if the employer relies on employee turnover to support the employer's good faith doubt of a union's majority status. This is so because we have adopted a rebuttable presumption that newly hired employees will support a union in the same ratio as the employees they replace.
 
 
 21
 Id., at 55 (citations omitted). See Curtin Matheson, 494 U.S. 788-93 (holding that Board's refusal to adopt anti-union presumption for replacement workers was rational and consistent with the Act); see e.g., National Plastics Product Co., 78 NLRB 699, 706 (1948).
 
 
 22
 Spillman also argues that we owe no deference to the Board's decision because the Board's "reliance" on several cases discussing factors relevant to a determination of a good faith doubt was "misplaced." However, Spillman has offered no evidence to rebut the presumption of majority support of the Union. Spillman contends that (1) the Union's winning margin was only 4 votes, and that this fact is material and relevant under the Board's prior holding in Thomas Industries, Inc., 255 NLRB 646 (1981); (2) the lack of employee comments expressing dissatisfaction with the Union is immaterial because the Southern Wipers decision does not require comments of dissatisfaction; and (3) there was a lack of communication between Spillman and the Union--a material fact under this court's decision in NLRB v. Flex Plastics, 726 F.2d 272, 275 (6th Cir.1984). Accepting arguendo these assertions, in the absence of any specific evidence of employee dissatisfaction, a conclusion that the Union lacked majority support is, as the Board found, "an unsupported assumption."
 
 
 23
 Furthermore, the Board did consider these factors and found that
 
 
 24
 [t]hese factors, like the employee turnover, do not help the Respondent. The 6-month bargaining hiatus is not a sufficient objective consideration on which to base a good-faith doubt of majority support. 'The Union's failure to meet with the employees is also inadequate as an objective consideration. We have found union inactivity for much longer periods than the 6 months at issue here to be insufficient to support an employer's good-faith doubt.' Moreover, the Union's reassertion of its bargaining rights in January 1992, negated any inference to be drawn from the preceding period of inactivity.
 
 
 25
 J.A. at 56 (citations omitted).
 
 
 26
 We have recognized that evaluating the weight to be accorded material and relevant factors is the function of the Board. See NLRB v. Washington Manor, Inc., 519 F.2d 750, 753 (6th Cir.1975). Accordingly, the Board should have flexibility to determine the proper weight to be accorded each factor in light of the totality of the circumstances. See Robinson Bus Service, 292 NLRB 70 (1988) (finding that employer's evidence of employee dissatisfaction in combination with other factors offered by employer, were not persuasive support for employers "good faith" doubt of union's majority status.); Thomas Industries, 255 NLRB 646 (1981) (holding that the statements of one quarter of the employees constituted objective evidence, but that upon analysis of surrounding circumstances, those statements failed to reasonably support a doubt of the unions majority status.); Compare id. with Taft Broadcasting, 201 NLRB 801 (1973) (finding that employees expressions of dissatisfaction, in combination with union inactivity and turnover, supported a good faith doubt of the unions majority status).
 
 IV.
 
 27
 We find substantial evidence in the record to support the Board's conclusion that Petitioner lacked a good faith belief in the loss of the Union's majority status. Accordingly, we AFFIRM the Board's decision and GRANT the Board's petition for enforcement of the order.
 
 
 
 *
 Honorable Joseph M. Hood, United States District Court Judge for the Eastern District of Kentucky, sitting by designation