BATCHELDER, J.
dissenting.
I respectfully dissent because, unlike the majority, I do not think that substantial evidence supports the NLRB’s conclusion that the statements contained in Question #22 interfered with the employees’ right to elect a labor union. In the days leading up to the election, Todd Lemke, the General Manager of Cooper’s Cedar Rapids warehouse, prepared two question-and-answer style memoranda (dated January 17, 2003 and January 27, 2003) for distribution to the employees. The NLRB found that the twenty-second question and answer in the second memo violated section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) by suggesting that management would not honor its commitment to pay the 2002 ROAM bonus if the employees agreed to unionize. This question and answer says:
QUESTION #22: If the [Union] gets in here, will we still be eligible for the ROAM bonus?
ANSWER: I don’t know. Cooper has some unionized workers at other facilities and none of them participate in the ROAM bonus program. Cooper expects to announce the amount of the ROAM bonus for this year early next month. Early indications show that the ROAM bonus looks very promising this year.
A union seeking to overturn the results of a representation election carries “the burden of showing that the election was not conducted fairly.” NLRB v. Superior Coatings, Inc., 839 F.2d 1178, 1180 (6th Cir.1988). ‘When preelection conduct is *770 claimed to have made a representation unfair, the party seeking to overturn the election must show that unlawful acts interfered with employees’ free choice and significantly affected the election results. The objector must show that the misconduct tended to prevent a fair election.” NLRB v. V & S Schuler Engineering, Inc., 309 F.3d 362, 368 (6th Cir.2002). We review for substantial evidence the NLRB’s conclusion that an election did not reflect the free and fair choice of the employees. NLRB v. Dickinson Press, Inc., 153 F.3d 282, 285 (6th Cir.1998) (quoting Mitchellace, Inc. v. NLRB, 90 F.3d 1150, 1155 (6th Cir.1996)).
The majority holds that by failing to “differentiate between the 2002 bonus and future bonuses,” Lemke’s answer to Question #22 cast doubt on whether Cooper would honor the employees’ right to the 2002 ROAM bonus, thereby influencing the election results in violation of Section 8(a)(1) of the NLRA. But the majority provides no reason why Lemke should make this distinction, and neither it nor the NLRB cites to language in the memo indicating that Question # 22 pertained to the 2002 ROAM bonus (as opposed to future ROAM bonuses). Because the Union carries the burden of proving that the election was not conducted fairly, Superior Coatings, 839 F.2d at 1180, we are not permitted to simply assume that Question #22 referenced the 2002 ROAM bonus. To the contrary, the most reasonable interpretation of Question #22 is that it pertains only to future ROAM bonuses inasmuch as it uses the future tense verb “will.” Had the writer of Question #22 intended to inquire about the 2002 ROAM bonus specifically, he likely would have asked “are we still eligible?”
Nor do I believe that Lemke’s answer to Question #22, “I don’t know,” had any coercive effect. The majority’s opinion assigns great significance to Answer #22’s statement that unionized workers at other Cooper Tire facilities do not participate in the ROAM bonus program and that the bonus “looks very promising this year.” Though nothing in the record casts doubt on the factual accuracy of this statement, the majority thinks that it “arguably reinforced the threatening implication that all ROAM bonuses, including the 2002 bonus, would be in jeopardy if the employees unionized.” However, nothing in Answer #22 provides the necessary causational link between the election of the Union and the revocation of the employees’ 2002 bonuses. Though Answer # 22 suggests that the employees’ decision to unionize could ultimately result in their ineligibility to receive future ROAM bonuses, it contains no language to support the inference that Cooper would revoke the ROAM bonus in retaliation for the employees’ decision to unionize.[1] Absent a link between ROAM eligibility and the employees’ union status, Answer # 22 may only be read as management’s attempt to influence the outcome of the election by predicting that the workers at the Cedar Rapids plant, like their counterparts at other unionized Cooper facilities, would not obtain rights to receive the *771 ROAM bonus through collective bargaining. Such predictions are entirely permissible. Beverly Enterprises-Indiana, Inc., 281 NLRB 26, 31, 1986 WL 54295 (1986) (“an employer may attempt to influence the outcome of an election by presenting facts and even making predictions based on fact, as long as the employer avoids using its influence to interfere with employee rights of free association”).
The Board’s decision is even less defensible when we consider the context in which Question #22 was asked and answered. In the January 17 memo, Lemke stated that Cooper would not cut employee benefits simply because they elected a union and James Schulze, an employee at the Cedar Rapids warehouse who served as the Union’s election observer, testified that he understood that it was illegal for employers to retaliate against employees who supported a union. Moreover, it is undisputed that the employees knew that their right to receive the 2002 ROAM bonus had vested a month before the election. It seems highly unlikely that an employee who knew that 1) he had a legal right to receive the ROAM bonus and 2) it is illegal for employers to retaliate against employees because they supported a union, would think that Question # 22 pertained to the 2002 ROAM bonus and interpret Lemke’s ambiguous answer as a threat.
Because substantial evidence does not support the NLRB’s conclusion that the Union carried its burden of proving that Cooper Tire engaged in coercive conduct that interfered with the employees’ exercise of their right to obtain union representation, I would reverse.

. The NLRB employed an erroneous legal standard in its failed attempt to link the possible revocation of the employees’ 2002 ROAM bonus with their decision to elect a Union. See First Healthcare Corp. v. N.L.R.B., 344 F.3d 523, 528 (6th Cir.2003) ("[i]f the Board errs In determining the proper legal standard, the appellate court may refuse enforcement on the grounds that the order has no basis in law”) (internal quotation omitted). The Board found that "[b]y emphasizing that none of Cooper’s unionized workers participate in the ROAM bonus program, the Employer might have caused employees reasonably to believe that their receipt of the bonus was conditioned on their choosing to remain nonunion.” (Emphasis added). The Union cannot sustain its burden of proof by establishing that a fact of consequence "might" have happened.