**PANNIER CORPORATION, GRAPHICS DIVISION, Petitioner/Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent/Cross–Petitioner.**

Nos. 96–5626, 96–5730.

United States Court of Appeals, Sixth Circuit.

Argued June 12, 1997.

Decided July 29, 1997.

Martin J. Saunders (argued and briefed), Susan Brahm Gunn (briefed), Jackson, Lewis, Schnitzler & Krupman, Pittsburgh, Pennsylvania, for Petitioner/Cross–Respondent.

Fred L. Cornnell, Jr. (argued and briefed), National Labor Relations Board, Office of the General Counsel, Aileen A. Armstrong (briefed), Deputy Associate General Counsel, Frederick C. Havard, National Labor Relations Board, Appellate Court Branch, Washington, DC, for Respondent/Cross–Petitioner.

Before: KENNEDY, GUY, and MOORE, Circuit Judges.

## OPINION

RALPH B. GUY, JR., Circuit Judge.

Petitioner, Pannier Corporation, Graphics Division, asks this court to review an order of respondent, the National Labor Relations Board (Board). Respondent cross-petitions for enforcement of the order. The Board found that petitioner had committed unfair labor practices in violation of § 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5), by refusing to bargain with the newly-elected union representative, whose election had been Board-certified. Petitioner argues that no violation has been shown, since the union was elected after the Board improperly set aside the first election, in which the union had been defeated, due to petitioner's failure to comply with the Board's mandatory regulation requiring that notice of an election be posted three full days prior to the date of the election.

Based on our review of the record and the arguments presented on appeal, we conclude that no error has been shown. Therefore, we deny petitioner's request for review and grant the Board's request for enforcement of its order.

## I.

Petitioner, Pannier Corporation, Graphics Division (the Company or Pannier), is a Pennsylvania corporation that manufactures fiberglass signs. The Company has an office and facility in Gibsonia, Pennsylvania, and transacts business within the jurisdiction of this court.

On November 8, 1994, District Lodge 83 of the International Association of Machinists and Aerospace Workers, AFL–CIO (the Union), filed a petition with the Board seeking an election to represent the Company's production and maintenance employees. That same day, the Board's regional director served Pannier with a copy of the petition. In forwarding it, the Board also included a

copy of the Board's rule regarding the posting of notices of election, 29 C.F.R. § 103.20. The rule reads as follows:

(a) Employers shall post copies of the Board's official Notice of Election in conspicuous places at least 3 full working days prior to 12:01 a.m. of the day of the election. In elections involving mail ballots, the election shall be deemed to have commenced the date the ballots are deposited by the Regional Office in the mail. In all cases, the notices shall remain posted until the end of the election.

(b) The term *working day* shall mean an entire 24–hour period excluding Saturdays, Sundays, and Holidays.

(c) A party shall be estopped from objecting to nonposting of notices if it is responsible for the nonposting. An employer shall be conclusively deemed to have received copies of the election notice for posting unless it notifies the Regional Office at least 5 working days prior to the commencement of the election that it has not received copies of the election notice.

(d) Failure to post the election notices as required herein shall be grounds for setting aside the election whenever proper and timely objections are filed under the provisions of § 102.69(a).

*Id.* In its cover letter the Board stated "[p]lease carefully review and comply with the provisions of this rule if an election is scheduled in this matter."

On November 25, a stipulated election agreement was entered into setting forth an election date of December 16, 1994. Paragraph 3 of that agreement required the Company to post copies of the election notice "in conspicuous places ... at least three (3) full working days prior to 12:01 a.m. of the day of the election." The agreement further stated, tracking in substance the language of Rule 103.20(d), "[f]ailure to post the Election Notices as required shall be grounds for setting aside the election whenever proper and timely objections are filed."

Three days later, the Board's regional director forwarded a copy of the approved election agreement to Pannier. In the accompanying transmittal letter, the Board again reminded Pannier of the posting requirement and penalty for non-compliance. The Board, quoting from the posting rule, underscored that "'An employer shall be conclusively deemed to have received copies of the election notice for posting unless it notifies the Regional Office at least 5 working days prior to the commencement of the election that it has not received copies of the election notice.'" It concluded, "[t]herefore, the Employer should notify the Regional Office if it has not received the Notices of Election by the fifth working day before the election."

On December 7, the Board mailed copies of the election notices for posting to Pannier. Another copy of Rule 103.20 was enclosed. The letter expressly informed Pannier that "[i]n order to comply with this rule [Rule 103.20], the Notice of Election ... must be posted by the Employer no later than 12:01 a.m., on Tuesday, December 13, 1994."

Pannier received the letter and its enclosures at approximately 4:30 p.m. of the afternoon of December 12. Prior to that time, Pannier had not informed the Board that it had not received the election notices.

Pannier posted the election notices at approximately 8:30 a.m. on December 13. The election was held on December 16. All eligible employees voted and the union was defeated 7–4, with 1 nondeterminative challenged ballot.

The Union subsequently filed six objections to the election alleging Pannier engaged "in a campaign of intimidation, coercion and deception among employees, thereby creating conditions under which the employees were unable to make a free and unfettered choice in the election." In its objections, the Union cited to Pannier's actions with respect to one employee who had been transferred to an office receptionist job one day after she became active on behalf of the Union. She was promised a permanent transfer if the Union was defeated. Thereafter the employee became a vocal opponent of the Union. In addition, it alleged that Pannier had pressured the father of one of its employees who also was employed by Pannier to get his son to withdraw from the organizing drive. In-

cluded among its objections was Pannier's failure to timely post the election notices.

In investigating these objections, the regional director found merit in the Union's objection regarding the posting violation. In light of this finding, he did not rule on the remaining objections. The Board adopted the regional director's recommendation that the election be set aside and a second election be held.

One of the members of the three-member panel, Chairman William Gould, dissented. He would have certified the results of the election based on Pannier's "substantial compliance" with the posting requirement. In support of his conclusion, he noted that the notices had been posted for 2 2/3 days prior to the election and all eligible voters had voted in the election.

A second election was held. This time the Union was elected by a 5 to 4 margin. Pannier did not file any objections to the election, and the Union was certified by the Board on August 16, 1995, as the employees' collective-bargaining representative. Despite its certification by the Board, the Union was unable to get Pannier to recognize and bargain with it.

On November 6, 1995, the Union filed an unfair labor practice charge against Pannier for refusing to bargain. The Board's general counsel issued a complaint and subsequently moved for summary judgment. The Board issued an order transferring the proceedings to itself and a notice to show cause why the motion should not be granted. Pannier responded, claiming that the Board erred in sustaining the Union's objection regarding Pannier's posting violation and in setting aside the first election.

Subsequently, the Board concluded that Pannier had unlawfully refused the Union's repeated requests for bargaining. In a unanimous decision, the Board granted the general counsel's motion for summary judgment. The three-member panel rendering the decision included Chairman Gould, who had dissented in the earlier decision to set aside the first election.

Pannier petitions this court for review of the Board's order, while the Board cross-petitions for enforcement.

## II.

Pannier contends that the Board abused its discretion in enforcing the letter of its notice posting regulation, 29 C.F.R. § 103.20. It argues that the Board's action did not have a reasonable basis in law because Pannier's procedural mistake was only "slight," there is no proof that the late posting interfered with employees' voting rights, and the Board has made exceptions to this requirement in the past.

The test for determining whether the Board has abused its discretion is whether its orders have a "'reasonable basis in law.'" *Van Dorn Plastic Mach. Co. v. NLRB,* 736 F.2d 343, 347 (6th Cir.1984). Board orders have no reasonable basis in law "'either because the proper legal standard was not applied or because the Board applied the correct standard but failed to give the plain language of the standard its ordinary meaning.'" *Id.* (quoting *Ford Motor Co. v. NLRB,* 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979)).

In *Van Dorn,* we stated "[t]he purpose of any rule relating to representation elections is to insure that employees have an opportunity to make a free and fair choice, that their right under section 7 of the Act, 29 U.S.C. § 157 (1976), 'to bargain collectively through representatives of their choosing,' is preserved." 736 F.2d at 347. Pannier contends that the three-day posting rule fails to satisfy this purpose and therefore has "no reasonable basis in law."

Petitioner's claim cannot be construed as anything other than an attempt to make an end run around the promulgation of 29 C.F.R. § 103.20. Nevertheless, petitioner denies that it is challenging the reasonableness of the regulation as adopted, but merely its application in this case.

The two cannot be separated. To the extent the regulation was properly promulgated, the Board is entitled to enforce its provisions. Under *Van Dorn,* therefore, the

issue is whether the Board, properly applying its regulations, "'failed to give the plain language of the standard its ordinary meaning.'" 736 F.2d at 347 (quoting *Ford Motor Co.*, 441 U.S. at 497, 99 S.Ct. at 1849). Petitioner's complaint lies in the fact that the Board did just that, it set aside the election because Pannier failed to post the election notices in compliance with Rule 103.20. The explanatory statements accompanying the rulemaking state:

> By establishing a specific length of time for posting, the provision made clear to the parties their respective responsibilities and obligations with respect to notice posting and attempted to eliminate unnecessary and time-consuming litigation on this issue.

52 FED.REG. 25,213, 25,213 (1987).

Our review of the case law suggests that the NLRB's decision is consistent with its earlier decisions applying the rule. *See, e.g., Club Demonstration Servs.*, 317 N.L.R.B. 349, 1995 WL 275848 (1995); *Terrace Gardens Plaza, Inc.*, 313 N.L.R.B. 571, 1993 WL 501837 (1993); *Smith's Management Corp.*, 295 N.L.R.B. 983, 1989 WL 224221 (1989).

Pannier argues that the Board has made exceptions under the rule in two previous decisions, *Madison Industries, Inc.*, 311 N.L.R.B. 865, 1993 WL 190078 (1993); and *Jumbo Produce, Inc.*, 294 N.L.R.B. 998, 1989 WL 224192 (1989), *enforced,* 931 F.2d 887 (4th Cir.1991). Those cases, however, are distinguishable. In *Madison Industries,* the employer posted an election notice four working days before the election date. The notice, however, contained an inadvertent error regarding voter eligibility. A corrected notice was posted two working days prior to the election. At all pertinent times either the original or revised notice remained posted. The employer challenged the timeliness of the notice under § 103.20. Under these facts, the Board found that the voter eligibility error did not undermine the timeliness of the original posting of notice. In addition, the Board noted no challenge was otherwise made to the adequacy of the notice.

Nor was any exception made as to the timeliness of the posted notice in *Jumbo Produce,* 294 N.L.R.B. at 998. In that case, the election notice was timely posted but in its Spanish version. The English version was posted shortly before the election. There was no evidence that any voters missed the voting due to the later posting of the English version of the notice.

Petition for review **DENIED**; cross-application for enforcement **GRANTED**.