no error in this regard.  *Id.* at 1180 (citing *ATR Wire & Cable Co. v. NLRB*, 752 F.2d 201 (6th Cir. 1981)); *see also  NLRB v. Bostik Div.*, 517 F.2d 971, 973-76 (6th Cir. 1975) (finding that neither a new election nor hearing was required despite several threats, damages to automobiles, and tampering with equipment).

According to the Company, Anthony Gardner revealed his marked ballot to the Union election observer after stating that the ballot procedures were not secret.  Perhaps three other voters were present.  The conduct is minor, especially given the fact that the Union received two-thirds of the votes in the September 17, 1999, election.  We find that the Board had substantial evidence supporting its denial of a new election based upon the Company's objections.

## Conclusion

Because we find substantial evidence in the record to support the Board's decision, we hereby grant the application for enforcement of the Board's order.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0378P (6th Cir.)
File Name:  02a0378p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

NATIONAL LABOR RELATIONS
BOARD,
                    *Petitioner,*

          *v.*                                    No. 01-1486

V & S SCHULER
ENGINEERING, INC.,
                    *Respondent,*

UNITED STEELWORKERS OF
AMERICA, AFL-CIO/CLC,
                    *Intervenor.*

On Application for Enforcement of an Order of the
National Labor Relations Board.
No. 8-CA-31342.

Argued:  September 10, 2002

Decided and Filed:  October 30, 2002

Before:  KRUPANSKY and CLAY, Circuit Judges; GWIN,
District Judge.[*]

_____

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

1

―――――――――

## COUNSEL

**ARGUED:**    Andrew C. Smith, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Respondent. Jeffrey Hirsch, NATIONAL LABOR RELATIONS BOARD, OFFICE OF THE GENERAL COUNSEL, Washington, D.C., for Petitioner. Angela E. Pace, ASSISTANT GENERAL COUNSEL, UNITED STEELWORKERS OF AMERICA AFL-CIO/CLC, Pittsburgh, Pennsylvania, for Intervenor. **ON BRIEF:**   Andrew C. Smith, David A. Campbell, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Respondent.   Jeffrey Hirsch, NATIONAL LABOR RELATIONS BOARD, OFFICE OF THE GENERAL COUNSEL, Washington, D.C., Aileen A. Armstrong, NATIONAL LABOR RELATIONS BOARD, APPELLATE COURT BRANCH, Washington, D.C., for Petitioner. Angela E. Pace, ASSISTANT GENERAL COUNSEL, UNITED STEELWORKERS OF AMERICA AFL-CIO/CLC, Pittsburgh, Pennsylvania, for Intervenor.

―――――――――

## OPINION

―――――――――

GWIN, District Judge.   With this opinion, the Court reviews the National Labor Relations Board's (the "Board") November 9, 2000, order and decision by which the Board asks this Court to enforce the order it issued against Respondent, V & S Schuler Engineering, Inc. ("Company" or "Schuler Engineering").[1]   In that decision, the Board found that the Company violated Sections 8(a)(5) and 8(a)(1) of the National Labor Relations Act, as amended, 29 U.S.C. § 151, et seq. (the "Act" or "NLRA") by refusing the request of Intervenor United Steelworkers of America, AFL-CIO/CLC (the "Union") to bargain and  furnish information.

―――――――――――――――

[1]332 N.L.R.B. No. 118,  165 L.R.R.M. (BNA) 1344 (2000).

an election.  There, the employer showed evidence that union supporters, wearing union hats and insignias, stood near the line to the polls and urged voters to protect their jobs with a vote for the union.  In addition, Colquest gave evidence that the union election observer entreated voters to vote for the union by telling them that this was the only way they could get back their jobs.  965 F.3d at 120.  Despite showing evidence of conduct more coercive than here involved, we rejected Colquest's claim:

> The affidavits produced by Colquest do not depict egregious examples of electioneering tactics.  Nor do the affidavits demonstrate evidence that the union supporters' electioneering tactics interfered with any voter's exercise of free choice.  Therefore, we hold that the electioneering to which Colquest objected was not sufficiently coercive to create an atmosphere of fear and reprisal to thereby render a free expression of choice impossible. Accordingly, we conclude that Colquest is not entitled to an evidentiary hearing on its first objection.

965 F.3d at 121; *see also Dayton Hudson Dept. Store Co. v. NLRB,* 987 F.2d 359, 364 (6th Cir. 1993) ("[A] single chance comment [by a union representative], even if made in a designated no-electioneering area, to a single employee outside the immediate polling area during an election won by a margin of almost 100 votes falls far short of impairing the exercise of employee free choice . . . .   Thus, this electioneering incident cannot be the basis for setting aside the election.").

We held the same in *NLRB v. Superior Coatings, Inc.,* 839 F.2d 1178 (6th Cir. 1988).  There the Board found that a union representative's statement that indicated that employees would be fired if the union lost the election did not interfere with the right to a fair union representation election.  The Board found the Union did not interfere with a fair election even though the threatening behavior of a Union agent is given more weight than that of a third party when determining whether or not the election should be set aside, and we found

*Auction, Inc. v. N.L.R.B,* Nos. 97-6487, 98-5096, 1999 WL 435160 at *5 (6th Cir. June 17, 1999) (unpublished table).

Because Garner was not an agent of the Union, we consider whether Gardner's action at the polling place could reasonably have created a general atmosphere of fear and coercion that made free choice impossible. *Pepsi-Cola Bottling Co.*, 289 NLRB 736 (1988). The Board found that it had not:

> Thus, the conduct, if considered as campaigning, does not rise to that which the Board considers objectionable since at worst only one employee divulged his ballot to another. This does not constitute objectionable conduct since it did not "so substantially impair the employees' exercise of free choice so as to require that the election be set aside."

Supplemental Report on Objections at 5, Joint Appendix 343.

Accepting the Company's description of Gardner's conduct, the Board did not abuse its discretion when it denied the Company's objection without hearing. To warrant a hearing, Schuler Engineering must show a prima facie case for invalidating the election. *Colquest Energy, Inc. v. NLRB*, 965 F.3d 116, 119 (6th Cir. 1992). In order to make a prima facie case for invalidating an election, an objecting party, such as the employers here, "bears the burden of demonstrating that there exist material issues of fact concerning whether the objectionable conduct affected the results of the election." *Id.* at 119. They must prove not only that unlawful acts occurred, but that "the conduct interfered with the voters' exercise of free choice," and that it did so "to such an extent that [it] materially affected the results of the election." *Id.* at 119-20; *see also Leslie Haulers, Inc. v. NLRB*, Nos. 95-5802, 95-5986, 95-6282, 95-6468, 1996 WL 690157 at *2 (6th Cir. Nov. 27, 1996) (unpublished table) (finding that *Colquest* sets a "high standard" for overturning an election).

In *Colquest*, we found the employer failed to raise substantial issues sufficient to warrant a hearing or to overturn

Schuler Engineering has refused to recognize the Union as the representative of the employees, alleging that the Board improperly granted its certification of the Union as the collective bargaining representative. Regarding its claim that the Board wrongly certified the Union in the underlying certification case,[2] Schuler Engineering first says the Board wrongly ordered a second election after finding the first election invalid. The Board found the first election invalid because of a Company prohibition against posting union material on the employee bulletin board and a solicitation of grievances by the Company President. Second, Schuler Engineering alleges that the Board erred when it certified the Union as the exclusive bargaining representative after denying, without hearing, the Company's objections to the second election. In objecting to the second election, the Company argued that an altered sample ballot, an employee's election-day conduct, and a supervisor's allegedly pro-union conduct warranted a new election.

Because we find that substantial evidence supports the Board's election certification and its finding that Schuler Engineering violated the Act by failing to bargain in good faith, we certify the Board's order requiring the Company to bargain collectively with the Union.

## Background

Schuler Engineering is an Ohio corporation with an office and place of business in Canton, Ohio, where it fabricates steel products.

On February 8, 1999, the Union filed a petition with the Board seeking certification as the representative of the production and maintenance employees at the Canton facility. After the parties agreed on the terms of an election, the Board conducted a secret-ballot election on March 22, 1999. The Union lost the election by one vote, with twenty employees

---

[2]N.L.R.B. Case 8-RC-15856.

voting against union representation and nineteen voting in favor of union representation.

The Union objected. Among its objections, the Union contended that the Company surveilled, harassed, and discriminated against union supporters. More important for purposes of this appeal, the Union argued that the Company interfered with the rights of employees to collectively bargain by both adopting a rule prohibiting the posting of union literature on the employee bulletin board and by the Company's President soliciting grievances to discourage support for the Union.

After affording a hearing on the objections, the Board rejected the Union's challenge to certain ballots and surveillance, harassment and discrimination claims. In a July 29, 1999, decision, the Board, however, set aside the election and ordered a new vote because the Company improperly prohibited union literature on the employee bulletin board and solicited grievances.[3]

On September 17, 1999, the Board conducted a second secret-ballot election. The Union won the election, with twenty-one employees voting in favor of union representation and fourteen voting against it.[4] On September 24, 1999, the Company filed objections to the election. Seeking to stop certification, the Company alleged that the Union improperly disseminated an altered sample ballot, that a union supporter openly campaigned in the voting area, and that a supervisor who supported the Union interfered with the employees' rights. After reviewing the Company's objections, the Regional Director recommended overruling the objections without a hearing and certifying the Union to represent the bargaining unit.

---

[3] On August 11, the Company filed a motion for reconsideration. The Board denied the motion on September 8, 1999.

[4] Two ballots were challenged, a number insufficient to affect the outcome.

been affected. In rejecting that Company's argument, we held that defaced sample ballots are easily recognized as propaganda, not notice of a position of the Board. *Id*. at 614.

The Company argues that the Board erred when it rejected this objection without a hearing. But the Company makes no clear showing of the necessity of such a hearing. When deciding whether a defaced notice affected an election, the Board looks to the defaced notice's tendency to mislead employees into believing that the Board favors a particular party using an objective standard. *See NLRB v. Dickinson Press, Inc.*, 153 F.3d 282, 286 (6th Cir. 1998) (refusing to rely on subjective evidence of union misconduct). In ruling on the Company's objections to the second election, the Board had the altered ballot available to it and was able to decide if the ballot suggested Board support for the Union.

Like our decision in *Hub Plastics, Inc.*, we find no reason to upset the Board's finding that the September 17, 1999, election was not unfairly affected by the anonymously posted sample ballot.

*Campaigning in Voting Area*

As a second ground, the Company further contests the second election on the grounds that a Union supporter campaigned in the voting area. Supporting this, the Company submits evidence that a known Union supporter, Anthony Gardner, revealed his marked ballot to the Union election observer after stating that the ballot procedures were not secret. The Union supporter made this display while two or three employees were present in the voting area. The Board found that Gardner "was not acting as an agent of the Union."

The Board rarely overturns the results of a representation election because of misconduct not attributable to a party to the election. The Board will overturn an election based upon the misconduct of third parties only if that "misconduct was so aggravated as to create a general atmosphere of fear and reprisal rendering a free election impossible." *Westwood Horizons Hotel*, 270 NLRB 802, 803 (1984); *Detroit Auto*

into believing that the Board had taken a position on the election:

> In the instant case, it is clear that the document did not mislead employees into believing that the Board favored the Union. Thus, the document in dispute was clearly *not* a Board Notice, as the incomplete language demonstrates at the top and bottom . . . .

Supplemental Report on Objections, Joint Appendix 342.

In finding that the altered election notice had no tendency to affect the election, the Board emphasized a number of matters. First, the Board found that readers would know the altered election notice was not a Board document because only a part of the document was posted. Electors would know that the Board would not post partial notices, especially given that "the employees here had already been involved in one election and could see the partial Notice for what it was -- pro-Union graffiti." *Id.* Second, only a single notice was involved, and that notice was not posted in the polling place during the election. The Company came forward with no evidence of the time the posting was made nor the number of individuals who observed it.

The Board found that the altered election notice did not affect the fairness of the election. We consider whether substantial evidence supports the Board's conclusion that the postings did not have the tendency to mislead employees to believe that the Board favored the Union's cause. *NLRB v. Hyatt Hotels, Inc.*, 887 F.2d 109, 111 (6th Cir. 1989).

We examined a similar factual setting in *NLRB v. Hub Plastics, Inc.*, 52 F.3d 608, (6th Cir. 1995). There, two NLRB sample ballots were defaced to indicate support for the Union. After an "extremely close" election, the Company challenged the results, arguing that the sample ballot defacement interfered with employee rights and warranted a new election. The Regional Director overruled the Company's objections, without a hearing. *Id.* at 610-11. We rejected that Company's argument that the fairness of the election had

The Company excepted to the Regional Director's recommendation. On December 23, 1999, the Board overruled the Company's objections to the second election and certified the Union as the employees' collective-bargaining representative.

After being certified as the representative for collective bargaining purposes, the Union solicited negotiations with the Company regarding terms and conditions of employment. The Company refused to negotiate and the Union filed an unfair labor practice charge. The Board's Regional Director issued a complaint alleging that the Company refused to bargain and provide requested information in violation of Section 8(a)(5) and (1) of the Act (29 U.S.C. § 158(a)(5) and (1)). The Company admitted its refusal to bargain and provide information, but defended against the complaint on the ground that the Union was improperly certified.

Rejecting this defense, the Board found the Company had engaged in unfair labor practices affecting commerce by refusing to bargain and provide information, in violation of Section 8(a)(5) and (1) of the Act.

Discussion

Schuler Engineering acknowledges it refused to bargain or provide information but argues that it had no duty to bargain because the Board improperly certified the Union as the exclusive collective bargaining representative.[5] In support of this argument, Schuler Engineering first says the Board wrongly set aside the first election, an election the Union lost by one vote, because of the Company's pre-election misconduct. Second, Schuler Engineering says the Board

---

[5]Courts cannot directly review representation proceedings. *See Am. Fed'n of Labor v. NLRB,* 308 U.S. 401 (1940). An employer seeking judicial review of election issues must refuse to bargain with the victorious union. The validity of the election can then be challenged in the ensuing unfair labor practice proceeding. *Id.*; *see also Twin City Hosp. Corp. v. NLRB*, 889 F.2d 1557, 1559 (6th Cir. 1989).

erred when it rejected, without hearing, the Company's objections to the second election, an election the Company lost by a wide margin with two-thirds of voters asking for Union representation.

## Standard of Review

Congress has given the Board a broad range of discretion in supervising representation elections and establishing their procedures. Thus, generally the role of a reviewing court is limited to determining whether the Board abused that discretion and whether the Board's findings are reasonable. *Randall, Burkart/Randall Div. of Textron, Inc. v. NLRB*, 638 F.2d 957, 959 (6th Cir. 1981). The Board's findings of fact are conclusive if supported by substantial evidence. The "Board's reasonable inferences may not be displaced on review even though the court might justifiably have reached a different conclusion had the matter been before it de novo." *NLRB v. St. Francis Healthcare Centre,* 212 F.3d 945, 952 (6th Cir. 2000). Evidence is substantial when it is "adequate, in a reasonable mind, to uphold the [Board's] decision." *Id.* at 951-952, (quoting *DTR Indus., Inc. v. NLRB*, 39 F.3d 106, 110 (6th Cir.1994)).

To decide whether the Board has abused its discretion, we determine whether its orders have a "reasonable basis in law." *Pannier Corp., Graphics Div. v. NLRB*, 120 F.3d 603, 606 (6th Cir. 1997) (quoting *Van Dorn Plastic Mach. Co. v. NLRB,* 736 F.2d 343, 347 (6th Cir.1984)). Board orders have no reasonable basis in law "either because the proper legal standard was not applied or because the Board applied the correct standard but failed to give the plain language of the standard its ordinary meaning." *Id.* (quoting *Ford Motor Co. v. NLRB,* 441 U.S. 488, 497 (1979)).

## Board's Review of Original Election

On March 22, 1999, the Board held a secret-ballot election at Schuler Engineering. The Union challenged certain ballots and objected to the election, arguing that the Company had surveilled, harassed and discriminated against union

*Id.* at 613. If the source of the alteration is clear, then the election stands, because the employee will know "that the document is propaganda, and will treat it accordingly." *Id.* If the source of the document is not apparent, then we consider whether the document has the tendency to mislead employees into believing that the Board favors one party's cause. *Id.*

The Company complains that an altered sample ballot should have led to a new election, or at least a hearing. The posting was anonymous and was only a potion of the Board's notice. The posting contained a handwritten "X" marked in the box used to vote for the Union, and that box was circled. It did not include Board rules and regulations. In requesting a new election, the Company gave no specific evidence describing the circumstances of the posting or the date the posting took place.[12]

In as much as the posting was anonymous,[13] we consider whether it had a tenancy to mislead employees into believing that the Board favored the Union. Reviewing this question, the Board found the posting could not have mislead voters

---

[12]Seeking a new election on the ground of the altered notice, the Company relied upon the affidavit of George Cook. In his affidavit, Cook testified:

> "In addition, one of the postings was defaced. Specifically, the Notice was marked with an "X" in the choice of Union representation and the box with the "X" was circled so as to make the selection obvious to the reader of the Notice."

Joint Appendix 105.

[13]In ruling upon the Company's objections to the second election, the Board's Regional Director found: "[t]here is no evidence as to who posted the documents apart from the Employer's assertion that they were `pro-Union supporters. There is no evidence that an altered or defaced Notice of Election was posted in the polling place during the election."

Joint Appendix 341.

altered sample ballot. Second, the Company said that a union supporter improperly campaigned in the voting area. Third, Schuler Engineering claimed that a supervisor improperly campaigned in support of the Union.

After conducting an investigation, the Regional Director recommended that the Board overrule the Company's objections and certify the Union as the representative of the employees. After receiving exceptions from the Company concerning this recommendation, the Board agreed with the Regional Director's recommendation and certified the Union as the employees' collective-bargaining representative. In ruling upon the Company's objections, the Board denied the Company's requests for a hearing. The Company contends that the Board was required to afford a hearing and contends that the Board wrongly overruled its objections to the election.

*Altered Election Notice Claim*

In reviewing whether an altered election notice warrants overturning an election, the Board determines whether employees were likely misled to believe that the Board itself took a position in the election. As described in *SDC Inv., Inc.*:

> [W]e believe that the crucial question should be whether the altered ballot in issue is likely to have given voters the misleading impression that the Board favored one of the parties to the election. When it is evident that the altered ballot is the work of a party, rather than the Board, employees are perfectly capable of judging its persuasive value.

274 NLRB 556, 557 (1985).

In *NLRB v. Hub Plastics, Inc.*, 52 F.3d 608 (6th Cir. 1995), we held that when reviewing altered ballots on a notice, we first look to whether the source of the alteration is apparent. The principal consideration is "whether the altered document on its face identifies the party responsible for its preparation."

supporters; promulgated a rule prohibiting the posting of union literature on the employee bulletin board; and solicited grievances to discourage support for the Union.

After an investigation, the Board's Regional Director ordered a hearing on the Union's objection to the election. After the May 25, 1999, hearing, the hearing officer recommended rejecting the Union's objection based upon surveillance, harassment and discrimination but recommended that the Board set aside the election because the Company solicited grievances and prohibited union literature on the employee bulletin board. After Company exceptions to the recommendation were denied, the Board adopted the hearing officer's findings and recommendation.

On September 17, 1999, the Board conducted the second election. The employees voted twenty-one to fourteen in favor of union representation; two ballots were challenged, a number insufficient to affect the outcome.

In seeking to overturn the results of a representation election, the Union had "the burden of showing that the election was not conducted fairly." *NLRB v. Superior Coatings, Inc.*, 839 F.2d 1178, 1180 (6th Cir. 1988). To make this showing, the Union must demonstrate that "unlawful conduct occurred which interfered with employees' exercise of free choice to such an extent that it materially affected the result of the election." *NLRB v. Shrader's, Inc.*, 928 F.2d 194, 196 (6th Cir. 1991).

The Board exercises primary responsibility in controlling certification elections. In doing this, the "Board has broad discretion to determine whether the circumstances of an election have allowed the employees to exercise free choice in deciding whether to be represented by a union." *NLRB v. Duriron Co., Inc.*, 978 F.2d 254, 256-57 (6th Cir. 1992).

When preelection conduct is claimed to have made a representation election unfair, the party seeking to overturn the election must show that unlawful acts interfered with employees' free choice and significantly affected the election

results.  The objector must show that the misconduct tended to prevent a fair election.  *Harborside Healthcare, Inc. v. NLRB*, 230 F.3d 206, 209 (6th Cir. 2000).

The Board found the Company interfered with a fair election in two regards.  First, the Board found that the Company interfered with a fair election by restricting union supporters  access  to  a  Company  bulletin  board  and  by soliciting grievances.

*Restriction of Employees' Use of the Bulletin Board*

Schuler Engineering had long maintained a bulletin board in the time clock area  for its exclusive use.  In late 1998, the Company installed a second bulletin board in the employees' lunchroom for exclusive use by employees.  Employees used the   bulletin  board   to  place  notices  of  car  sales,  church notices, and other informal postings.  Explaining the limits on postings on the employee board, the Company vice-president of operations said "the only restriction on postings was that they could not be obscene."

After the Union's representation campaign, the Company posted literature on its board expressing opposition to the Union  organizing  campaign.    In  addition  to  expressing opposition to the Union's campaign, the Company began restricting,  for  the  first  time,  postings  on  the  employee bulletin board and began stopping the posting of pro-union materials.  Also  for   the  first  time,  the  Company  began requiring Company approval before employees could post materials on the employee board.

In  March  1999,  an  employee  posted  a  letter  with a "somewhat anti-union . . . tone" on the employee bulletin board.    Vice-president  Shaheen  "determined  that  all employees  should  read  it"  and  placed  the  letter  on  the Company's bulletin board.  At the same time, the Company prohibited  the  postings  of  pro-union  materials  on  the employee bulletin board.

102.69(d).[10]   In  *Colquest  Energy*,  965  F.2d  at  119,  we described our review:

> [T]he  N.L.R.B.  has  broad  discretion  in  resolving representation  disputes.   The  function  of  this  Court sitting in review of an N.L.R.B. decision is to ascertain whether the Board abused its discretion in resolving the dispute.  The N.L.R.B. abuses its discretion if it refuses to grant an evidentiary hearing when there exist material issues of fact concerning whether a fair election was held.

A  hearing  is  not  required  when  all  the  claims  of  the objecting party, if accepted as true, would not warrant setting aside the election.  *NLRB v. Smith Indus., Inc.*, 403 F.2d 889, 892  (5th  Cir.  1968).    A  hearing  in  a  post-election representation proceeding is unnecessary where, if all facts contended for by the objecting party were credited, no ground would  be  shown  which  would  warrant  setting  aside  the election.  29 C.F.R. § 102.69(c).

The Board conducted the second election on September 17, 1999.  In that election, the employees voted in favor of union representation  by  a  twenty-one  to  fourteen  margin.[11]   The Company filed three objections to the election.  First, the Company alleged that the Union improperly disseminated an

---

[10]29 C.F.R. § 102.69(d):

In issuing a report on objections or challenged ballots, or both, following  proceedings  under  §§  102.62(b)  or  102.67,  or  in issuing a decision on objections or challenged ballots, or both, following proceedings under § 102.67, the regional director may act on the basis of an administrative investigation or upon the record of a hearing before a hearing officer. Such hearing shall be  conducted  with  respect  to  those  objections  or  challenges which  the  regional  director  concludes  raise  substantial  and material factual issues.

[11]In  the  second  election,  2  ballots  were  challenged,  a  number insufficient to affect the outcome.

We do not disturb Board findings as to whether an election reflected the "free and fair choice" of employees where substantial evidence supports the Board's conclusions. *Contech Div., SPX Corp. v. NLRB*, 164 F.3d 297, 305-06 (6th Cir. 1998) (citing *NLRB v. Dickinson Press Inc.*, 153 F.3d 282, 285 (6th Cir.1998)). The Board had substantial evidence supporting its order of a new election. We decline to reverse the Board's conclusions in this area, committed to the Board's expertise.

### Company Objections to the Second Election

As to Schuler Engineering's claim that the Board erred when it refused to conduct an evidentiary hearing on the Company's objections to the second election, we make a limited review. The NLRB has broad discretion in establishing and administering representation election rules, and in resolving representation disputes. *NLRB v. Shrader's, Inc.*, 928 F.2d 194, 196 (6th Cir. 1991) (citing *NLRB v. Hyatt Hotels, Inc.*, 887 F.2d 109, 111 (6th Cir. 1989)); *NLRB v. Basic Wire Prods., Inc.*, 516 F.2d 261, 263 (6th Cir. 1975).

We review the claim using an abuse of discretion standard. *Colquest Energy*, 965 F.2d at 119. To show that the Board abused its discretion, the Company must show the union's pre-election conduct unduly influenced the results of an election by interfering with "employees' exercise of free choice to such an extent that it materially affected the result of the election." *Comcast*, 232 F.3d at 494 (citing *NLRB v. Tenn. Packers, Inc.*, 379 F.2d 172, 180 (6th Cir. 1997)).

Under Board regulations, a hearing is required only where objections raise substantial factual issues. 29 C.F.R.

Generally, an employer may not restrict communication among employees regarding representation or self-organization issues except when such "a restriction is necessary to maintain production or discipline." *NLRB v. Challenge-Cook Bros., Inc.*, 374 F.2d 147, 153 (6th Cir. 1967); *see also NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 113 (1956).

The right of self-organization includes the right to use the company bulletin board for union notices if the bulletin board has been used for other notices without any required advance authorization. *Green Giant Co.*, 223 NLRB 377 (1976); *NLRB v Challenge-Cook Bros. of Ohio, Inc.*, 374 F2d 147 (6th Cir. 1967). An employer cannot discriminate against the posting of employee support for organization unless the posting interferes with production or discipline. *Union Carbide Corp. v. NLRB*, 714 F.2d 657, 660-61 (6th Cir. 1983); *see also Roadway Express, Inc. v. NLRB*, 831 F.2d 1285, 1290 (6th Cir. 1987).

While recognizing that Sixth Circuit authority holds that where a policy "permits employee access to bulletin boards for any purpose, Section 7 of the Act, 29 U.S.C. Section 157, secures the employees' right to post union materials." *Union Carbide Corp. v. NLRB,* 714 F.2d 657, 660-61 (6th Cir. 1983). Schuler Engineering argues that the Board changed this authority in *Caterpillar, Inc.*, 324 NLRB 201 (1997).

In *Caterpillar*, the Board adopted an administrative law judge's finding that the employer violated employee rights under Section 8(a)(1) of the Act (29 U.S.C. § 158(a)(1)) by removing employee postings that supported the union. In *dicta*, the administrative law judge stated that he started his analysis:

> with the assumption, arguendo, that [the employer] . . . is[] entitled to implement a rule permitting employees to post on employee bulletin boards meeting notices, thank you cards, bereavement notices, and for-sale items (so long as those items are short enough to be quickly read) while prohibiting employees from

posting anything that requires more than a few seconds to read and any materials espousing particular points of view.

*Id.* at 206. However, as the administrative law judge stated, the employer in *Caterpillar* had no such "short enough to be quickly read" rule. The administrative law judge's impressions are not the holding of the case but are dicta. And as dicta, they do not establish a Board rule and are not sufficient precedent to sway this Court.

But more important, the Company, in its discussion on the matter, completely ignores clear Board precedent and clear precedent of this Circuit. For example, in *Waste Management., Inc.*, 330 NLRB No. 96, 2000 WL 191451, at *5 (Feb. 14, 2000), the Board adopted an administrative law judge's reasoning that:

> It has long been held that an employer violates the Act if it prohibits the posting of material relating to and in the course of concerted activity of its employees, while having previously allowed the posting of other miscellaneous matters by the employees. The Employer's motivation in this regard, no matter how well meant, is irrelevant. It is also irrelevant as to how the Employer treats antiunion literature, once it is established that other employee notices are treated disparately from prounion notices.

(citations omitted). To like effect, the Board in *Benteler Indus., Inc.*, 323 NLRB 712, 713 (1997), *enforced mem.* 149 F.3d 1184 (6th Cir. 1998), found that when an employer allows the use of employee bulletin boards for personal matters, the employer may not thereafter stop the posting of union flyers.[6]

---

[6] In *Bentler*, the Board described this rule:

Board law is well established that there is no statutory right of employees or a union to use an employer's bulletin board.

to exercise free choice in deciding whether to be represented by a union." *See Contech Div. v. NLRB,* 164 F.3d 297, 302, 306 (6th Cir. 1998) (quoting *NLRB v. Duriron Co.,* 978 F.2d 254, 256-57 (6th Cir. 1992)). "The Board's findings with respect to whether an election reflected the 'free and fair choice' of the employees will not be disturbed on appeal where there is substantial evidence . . . to support its conclusions." *NLRB v. Dickinson Press Inc.,* 153 F.3d 282, 285 (6th Cir. 1998) (quoting *Mitchellace, Inc. v. NLRB*, 90 F.3d 1150, 1155 (6th Cir. 1996)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

The Board found the Company's solicitation of grievances and refusal to allow posting of pro-union literature interfered with the results of the election. The Board had support for this finding.

First, Schuler Engineering's unlawful acts took place in a very close election. A single vote decided the outcome. Given the extreme closeness of the election, the Company's misconduct can taint the election result easier. *See Colquest Energy, Inc. v.* NLRB, 965 F.2d 116, 122 (6th Cir. 1992) (finding that closeness in election results is an important consideration); *NLRB v. Mr. Porto, Inc.*, 590 F.2d 637, 639 (6th Cir. 1978) ("[A] close election is a factor which demands that even minor infractions be scrutinized carefully.").

Second, the Company engaged in the unlawful actions on the doorstep of the election. Niehaus solicited grievances in exchange for a "no vote" only five days before the election. The temporal proximity to the election supports the Board's finding that the Company improperly interfered with employees' free choice. The Company's policy change regarding the bulletin board also came near the election. *See Contech Div. v. NLRB*, 164 F.3d 297, 302, 306 (6th Cir. 1998); *Torbitt & Castleman, Inc. v. NLRB*, 123 F.3d 899, 908 (6th Cir. 1997) ("[E]ven a small benefit [granted] during the critical period may be actionable.").

inquiries and likewise urging his employees that the combined program of inquiry and correction will make union representation unnecessary." *Orbit Lightspeed Courier Sys.*, 323 NLRB 380, 393 (1997).

We review the Board's findings under an abuse of discretion standard. And we must give the Board leeway in this area specially committed to its expertise if its findings are reasonable and supported by substantial evidence. In finding that the Company violated employee rights through solicitations, the Board had more than sufficient evidence.

*Board's Decision to Order a New Election*

Making a somewhat more plausible argument, Schuler Engineering contends that the Board abused its discretion in ordering a new election, even if the Board had grounds to find violation of the Act in the solicitation and bulletin board issues. But given the narrow margin of the March 22, 1999, election, the Company fails to prove to this Court that the Board abused its discretion in ordering a new election.

To justify a new election, the objecting party must show "not only that unlawful acts occurred, but also that they interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election." *NLRB v. Bostik Div., USM Corp.,* 517 F.2d 971, 975 (6th Cir.1975) (quoting *NLRB v. White Knight Mfg. Co.*, 474 F.2d 1064, 1067 (5th Cir.1973)). To justify a new election, the unlawful acts must interfere with the employees' free choice and must materially affect the election.

In reviewing the Board's determination of these questions, we review the Board's findings of fact and its application of law to the facts under a substantial evidence standard. *Evergreen Healthcare, Inc. v. NLRB*, 104 F.3d 867, 873 (6th Cir. 1997); *NLRB v. Pentre Elec., Inc.*, 998 F.2d 363, 368 (6th Cir. 1993).

We give the Board "broad discretion to determine whether the circumstances of an election have allowed the employees

Schuler Engineering therefore violated Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), when it removed employee postings that supported the union and when it refused permission to make similar postings.

*Solicitation of Grievances by the Company President*

In addition to finding that the Company violated the Act by impairing employees' ability to communicate by stopping use of the employee bulletin board, the Board found that the Company had violated the Act by soliciting employee grievances with the implication that they would be resolved if the employees turned their backs on union representation.

In response to the Board's finding that the Company violated the Act by soliciting grievances, Schuler Engineering says the Board abused its discretion because substantial evidence does not support its finding. However, more than sufficient evidence supports the Board's finding.

The background of this issue began shortly before the March 25, 1999, election. On March 17, 1999, Company president Werner Niehaus visited and walked through the Schuler Engineering, Canton, Ohio plant, talking with employees. In his discussion with the employees, Niehaus "ask[ed] the employees for time to deal with these problems and that they could have another vote on the union in the future if they wanted." He made promises to meet further

---

However, if the employer permits employees to use its bulletin board for the posting of notices relating to personal, nonwork-related items such as sales of personal property, cards, and thank-you notes, it cannot validly discriminate against notices of union meetings which employees have posted. Moreover, in such cases, the employer's motivation, no matter how well meant, is irrelevant.

*Benteler Indus., Inc.*, 323 NLRB 712, 714 (1997), *enforced mem.* 149 F.3d 1184 (6th Cir. 1998).

with employees,[7] and he asked employees for a commitment to give him time and to vote "No" in the quickly upcoming election. Niehaus also asked the employees whether he should fire the current management.[8] Niehaus followed up with a letter to employees proposing a series of meetings to discuss employee problems.

Discrediting claims that the president had talked to employees in a similar fashion on earlier occasions, the Board found that the record, "even when limited to the testimony of Niehaus alone, establishes a classic solicitation of grievances by an employer."

Under the Act, an employer cannot solicit grievances from employees during a union organizing campaign with the express or implied suggestion that the problems will be resolved if the union is turned away. An employer violates section 8(a)(1) of the Act by soliciting grievances when such solicitation "is accompanied by an express or implied promise of benefits specifically aimed at interfering with, restraining, and coercing employees in their organizational effort." *ITT Telecomm.,* 183 NLRB 1129, 1129 (1970).

The solicitation of grievances is not itself an unfair labor practice. But when the circumstances of the solicitation

---

[7]Niehaus testified:

A. . . . And let us improve the communication and I will be at your service once a month to help you to get communication together with – with Schuler management and you.

Joint Appendix 265.

[8]The hearing officer found:

He admits that he asked the employees, among other things, if he should fire current local management or if management should be provided with additional training."

Joint Appendix 64.

implicitly or explicitly promise to correct grievances the solicitation may violate section 8(a)(1). Solicitation of grievances can violate Section 8(a)(1) because "the combined program of inquiry and correction" suggests that "union representation [is] unnecessary." *Reliance Elec. Co.,* 191 NLRB 44, 46 (1971), enf'd, 457 F.2d 503 (6th Cir. 1972). An employer who has not previously solicited grievances but begins to do so in the midst of a union campaign creates a "compelling inference" that the employer is "implicitly promising" to correct the problems. *Id.*

As we described in *NLRB v. Arrow Molded Plastics, Inc.*, 653 F.2d 280, 283 (6th Cir. 1981):

It is an unfair labor practice, however, to solicit employee grievances where the solicitation is accompanied by the employer's express or implied suggestion that the grievance will be resolved or acted upon only if the employees reject union representation.

*See also Torbitt & Castleman, Inc. v. NLRB*, 123 F.3d 899, 907 (6th Cir. 1997).

The Board found that Niehaus had never previously engaged employees in similar solicitations.[9] When an employer institutes a new practice of soliciting employee grievances during a union organizational campaign, "there is a compelling inference that he is implicitly promising to correct those inequities he discovers as a result of his

---

[9]The Board stated:

The Employer defends further on the basis that Niehaus had previously conducted the same sort of problem-solving discussions with employees. I find that argument to be without any support in this record. Niehaus made several vague claims that he had talked to employees during previous visits about their problems. Based on my observation of his testimony, unsupported by any other evidence, I discredit these claims.

Joint Appendix at 65.