RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0271p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

NATIONAL LABOR RELATIONS BOARD,

*Petitioner,*

*v.*

No. 05-1783

PRECISION INDOOR COMFORT INC.,

*Respondent.*

>

On Application for Enforcement of an Order
of the National Labor Relations Board.
No. 8-CA-35080.

Argued:  June 9, 2006

Decided and Filed:  August 2, 2006

Before:  MOORE, COLE, and CLAY, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Gary W. Spring, ROETZEL & ANDRESS, Akron, Ohio, for Respondent.  Colleen M. Leyrer, NATIONAL LABOR RELATIONS BOARD, Washington. D.C., for Petitioner. **ON BRIEF:** Gary W. Spring, ROETZEL & ANDRESS, Akron, Ohio, for Respondent.  Colleen M. Leyrer, Aileen A. Armstrong, Fred B. Jacob, NATIONAL LABOR RELATIONS BOARD, Washington. D.C. for Petitioner.

———————————

**OPINION**

———————————

R. GUY COLE, JR., Circuit Judge.  The National Labor Relations Board ("NLRB," or "Board") seeks enforcement of its February 16, 2005 Order that Respondent, Precision Indoor Comfort Inc. ("Precision"), violated Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act, by refusing to bargain with the Sheet Metal Workers International Association, Local Union No. 33 (the "Union") following a certification election held in November 2003.  Precision argues that the NLRB erred in certifying the Union's representation because pro-Union employees and one Union representative threatened an employee who was to vote in the election, and that the NLRB erred in failing to conduct an evidentiary hearing on Precision's objections.  For the reasons set forth below, we GRANT the Board's petition for enforcement.

1

I.

In 2003, the Union filed a petition with the Board for an election at Precision to determine whether Precision's employees would be represented by the Union. An election was conducted by secret ballot on November 7, 2003, in which all nine eligible voters cast ballots. Five ballots were cast in favor of the Union, three against, and one vote was challenged but never opened because it would not have affected the election results.

Precision filed an objection to the election proceedings on November 14, 2003, alleging that the Union contravened § 8(b)(1)(A) of the Act, by coercing, harassing, intimidating, and physically threatening Precision's employees. In a deposition taken on November 10, 2003, Kyle White testified that a fellow employee told him that if he voted against union representation, "The guys are going to want to kick your – your butt." J.A. at 41. White's counsel reminded him to be accurate, and prompted White with the question, "And he said, 'If you don't [vote for union representation] all the guys are going to kick your ass'?," to which White responded in the affirmative. J.A. at 41. White also testified that another employee told him that the owners of the business had been "talking . . . shit about you and they're going to let you go after this is all said and done anyhow." J.A. at 42. White also testified that he had received several phone calls from Matt Oakes, a Union representative, and that on one occasion Oakes asked White, "Are you feeling okay?" White felt that Oakes was trying to pressure him into voting in favor of the Union.

After conducting an administrative investigation into Precision's objection, but without conducting a hearing, the Board's regional director found the objection to be without merit and recommended the Board overrule it. The regional director concluded that the alleged statements by Precision employees to White "did not create an overall atmosphere of fear and coercion." J.A. at 28. The regional director further concluded that the Union representative's question, "Are you feeling okay?", was at best ambiguous and "certainly cannot be construed as threatening, coercive or intimidating." J.A. at 28.

The Board adopted the regional director's findings and conclusions and issued a certification of representation, and the Union requested that Precision meet and bargain with it. Upon Precision's failure to respond to the request, the Union filed a charge against Precision citing unfair labor practices under §§ 8(a)(1) and 8(a)(5) of the Act. The Board issued a decision and order in favor of the Union on February 16, 2005 and petitioned this Court for enforcement of its order on June 20, 2005.

II.

This Court has jurisdiction over the Board's application for enforcement pursuant to § 10(e) of the National Labor Relations Act. 29 U.S.C. § 151, 160(e). "Because union election proceedings are not directly reviewable by the courts, an employer desiring a judicial determination of the fairness of an election must refuse to bargain with the union." *Maremont Corp. v. NLRB*, 177 F.3d 573, 576 (6th Cir. 1999). "The election may then be challenged in an unfair labor practice proceeding brought against the employer by the NLRB." *Id.; see also NLRB v. V&S Schuler Eng'g, Inc.*, 309 F.3d 362, 367 n.5 (6th Cir. 2002).

The Board has broad discretion in certifying the results of a representation election. *V&S Schuler*, 309 F.3d at 372. We do not lightly set aside representation elections. *Dayton Hudson Dep't Store Co. v. NLRB*, 79 F.3d 546, 550 (6th Cir. 1996). To establish that the representation election violated § 8(b)(1)(A) of the National Labor Relations Act, Precision bears the burden of demonstrating that "unlawful conduct occurred which interfered with employees' exercise of free choice to such an extent that it materially affected the results of the election." *NLRB v. Shrader's Inc.*, 928 F.2d 194, 196 (6th Cir. 1991). The Board will overturn an election based upon the

misconduct of third parties only if that "misconduct was so aggravated as to create a general atmosphere of fear and reprisal rendering a free election impossible." *V&S Schuler*, 309 F.3d at 375. The regulations permit the regional director to review objections to an election without conducting a hearing where, even if all of the objecting party's allegations were taken as true, no ground would be shown which would warrant setting aside the election. 29 C.F.R. § 102.69(c); *V&S Schuler*, 309 F.3d at 373.

To warrant a remand by this Court for a hearing, Precision's objections and supporting proofs must "indicate that there exist material, factual disputes with the Regional Director's report which, if proved, demonstrate that the election should be overturned." *Colquest Energy, Inc. v. NLRB*, 965 F.2d 116, 119 (6th Cir. 1992). We review the Board's factual findings and applications of law to fact under the substantial evidence standard. 29 U.S.C. § 160(e); *Harborside Healthcare Inc. v. NLRB*, 230 F.3d 206, 208 (6th Cir. 2000). Evidence is substantial when a reasonable mind, reviewing the entire record, including contrary evidence, would consider the evidence adequate to uphold the Board's decision. *Harborside Healthcare*, 230 F.3d at 208.

The statements of White's co-workers were properly reviewed under the third-party standard, which requires a finding that the conduct was so serious as to create a general atmosphere of fear and coercion. *V&S Schuler*, 309 F.3d at 375. Warnings to an employee regarding "planned post-election firings" are a "permissible partisan appeal for union support," as distinguished from "situations in which a union representative suggests that workers will be fired in direct retaliation for voting against the union." *NLRB v. Superior Coatings, Inc.*, 839 F.2d 1178, 1181 (6th Cir. 1988). Thus, the comment to White that he ought to vote for Union representation because his supervisors were talking about firing him would not support a conclusion that White's co-worker created a general atmosphere of fear and coercion.

Likewise, the comment to White that "the guys are going to want to" do him physical harm, or, as rephrased by White's attorney, that the "guys are going" to do him physical harm, also would not support a conclusion that a general atmosphere of fear and coercion existed, because such an isolated comment is not comparable to the seriousness of threats involved in cases where representation elections have been set aside. For example, in a case cited by Precision, *Electra Food Machinery, Inc.*, 279 N.L.R.B. 279, 279 (1986), anti-union employees were subjected to repeated and specific threats, including threats of death and damage to specific property. Likewise, in *Sequatchie Valley Coal Corp.*, 281 N.L.R.B. 726, 726 (1986), employees were subjected to repeated threats of serious physical harm, including death. In *Picoma Industries, Inc.*, 296 N.L.R.B. 498, 498 (1989), the threats were public and included blowing up the mill, "blow[ing] off [the] heads" of picket line crossers, slashing their tires, blowing up an anti-union employee's car and beating her up. The alleged threat against White also is not comparable to those in cases such as *Colquest* where the court remanded for a hearing. In *Colquest*, the alleged misconduct included threats to burn down a voter's home, to attack him on the side of the road at night, to plant dynamite near him, and to "change [his mind] for him." 965 F.2d at 121-22.

Threatening conduct of a union agent is given more weight than that of a third party when determining whether an election should be set aside. *Superior Coatings*, 839 F.2d at 1180. Thus, the Union representative's phone call to White asking whether he was "feeling okay" would warrant setting aside the results of the election if it were shown that the conduct interfered with White's exercise of free choice to such an extent that it materially affected the results of the election. *V&S Schuler*, 309 F.3d at 368. Precision bears the burden of "making specific allegations and a proffer of proof" to demonstrate the need for a hearing to resolve a factual dispute. *NLRB v. Pinkerton's, Inc.*, 621 F.2d 1322, 1325 (6th Cir. 1980). Precision has provided no information regarding the context of the Union representative's question. Substantial evidence supports the regional director's conclusion that the statement alone, without any context, is ambiguous and not threatening.

Precision correctly observes that the closeness of a representation election is an important consideration in determining whether the misconduct at issue warrants setting aside the election. *See Colquest*, 965 F.2d at 122. Even so, we must nevertheless weigh this factor in connection with the "severity of the threats." *See id.* The closeness of an election does not warrant setting aside the election results where, as here, "the company's objections go to a handful of isolated incidents." *NLRB v. Bostik Div., USM Corp.,* 517 F.2d 971, 975 & n.5 (6th Cir. 1975).

Finally, Precision's argument that a hearing was needed in order compel testimony from Union representatives and employees, and thereby develop the necessary evidence, has already been rejected by this Court. *See NLRB v. Palmer Donavin Mfg. Co.,* 369 F.3d 954, 959 (6th Cir. 2004). Precision's argument "ignores that it was their burden to come forward with evidence that would warrant conducting a hearing in the first instance." *Id.*

Because substantial evidence supports the Board's conclusion that Precision's alleged facts would not have warranted setting aside the election even if proven, Precision is not entitled to a remand for an evidentiary hearing. *Colquest*, 965 F.2d at 119.

III.

Having found no basis to disturb the Board's ruling, we GRANT the NLRB's application for enforcement of its order.